The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Edward A. LOWE, Defendant–Appellant.

No. 01CA1876.

Colorado Court of Appeals, Div. IV.

July 18, 2002.

Certiorari Denied Jan. 6, 2002.

---

** Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2001.

Ken Salazar, Attorney General, Juliana M. Zolynas, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Edward A. Lowe, Pro Se.

Opinion by Judge VOGT.

Defendant, Edward A. Lowe, an inmate in the Colorado Department of Corrections (DOC), appeals a trial court order determining that DOC properly withheld money from his inmate account to pay fees and costs imposed as part of his sentence in a 1992 criminal case. We affirm.

Defendant pled guilty in 1992 to second degree sexual assault and was sentenced to sixteen years in DOC. In addition, he was ordered to pay court costs ($30), a victim compensation cost ($100), and a victim assistance surcharge ($100). According to the mittimus, restitution was "reserved."

In September 2000, after the General Assembly enacted § 16–18.5–101, et seq., C.R.S. 2001 (the Restitution Act), which included new provisions for the collection of unpaid restitution, DOC began withholding twenty percent of the deposits into defendant's inmate account to apply towards payment of the costs he had been ordered to pay when he was sentenced.

Defendant filed a motion in his criminal case for an order to show cause, arguing that DOC was not entitled to withhold money from his account because he had not been ordered to pay restitution. After ordering and receiving a response from DOC, the trial court concluded that the withholding was authorized under the Restitution Act and, accordingly, denied defendant's motion.

## I.

■ Defendant contends that, because the sentencing court reserved any ruling on restitution, the Restitution Act did not permit DOC to withhold money from his account. We disagree.

In construing a statute, our primary task is to ascertain and give effect to the intent of the General Assembly. To do so, we must first look to the language of the statute itself. When the language of the statute is clear, so that the legislative intent can be discerned with reasonable certainty, there is no need to resort to other rules of statutory construction. *People v. District Court,* 894 P.2d 739 (Colo.1995); *People v. Moltrer,* 983 P.2d 810 (Colo.App.1999).

Because construction of a statute is a question of law, we are not bound by the trial court's interpretation. *Gorman v. Tucker,* 961 P.2d 1126 (Colo.1998).

The Restitution Act was enacted to establish procedures to provide for and collect full restitution for crime victims. Section 16–18–101(1)(g)(I), C.R.S.2001. It includes the following provision for collection of restitution from DOC inmates:

> During any period of time that a defendant is a state prisoner, ... the executive director of the department of corrections ... may fix the time and manner of payment of restitution and may direct that a portion of the deposits into such inmate's bank account be applied to any unpaid restitution. At a minimum, the executive director shall order that twenty percent of all deposits into an inmate's bank account, including deposits for inmate pay, shall be deducted and paid toward any outstanding order from a criminal case or for child support.

Section 16–18.5–106(2), C.R.S.2001.

The Act defines "restitution" broadly:

> "Restitution" means any pecuniary loss suffered by a victim, and includes but is

not limited to all out-of-pocket expenses, interest, loss of use of money, anticipated future expenses, rewards paid by victims, money advanced by law enforcement agencies, adjustment expenses, and other losses or injuries proximately caused by an offender's conduct and that can be reasonably calculated and recompensed in money. Section 16–18.5–102(3)(a), C.R.S.2001.

The term "victim," as used in the definition of restitution and elsewhere in the Act, includes "[a]ny victim compensation board that has paid a victim compensation claim." Section 16–18.5–102(4)(a)(IV), C.R.S.2001. Further, the last section of the Restitution Act, which addresses the *order of crediting payments*, provides:

> Payments received shall be credited in the following order:
>
> (a) *Costs for crime victims compensation fund,* pursuant to section 24–4.1–119, C.R.S.;
>
> (b) *Surcharges for victims and witnesses assistance* and law enforcement fund, pursuant to section 24–4.2–104, C.R.S.;
>
> (c) Restitution;
>
> (d) Time payment fee;
>
> (e) Late fees; and
>
> (f) Any other fines, fees, or surcharges.

Section 16–18.5–110(1), C.R.S.2001 (emphasis added).

Under the plain language of these provisions, any sums a defendant is ordered to pay as a *victim compensation cost or victim assistance surcharge* are within the purview of the Restitution Act, even if they are identified separately from "restitution" on the defendant's mittimus.

Defendant was also ordered to pay court costs of $30. Although court costs do not necessarily fall within the definition of "restitution" in § 16–18.5–102(3)(a), withholding of such costs from an inmate account is authorized under another statute. Section 16–11–101.6(5), C.R.S.2001, provides that DOC may direct that a portion of an inmate's wages or compensation be applied to "any unpaid fines or fees." Further, the Restitution Act provision cited above addressing the order of crediting payments contemplates that such payments will be applied to "[a]ny other

fines, fees, or surcharges." Section 16–18.5–110(1)(f), C.R.S.2001.

Although defendant's mittimus indicates that "restitution" was reserved, defendant was specifically ordered to pay a total of $230 for court costs, victim compensation cost, and a victim assistance surcharge. Defendant does not assert that he previously paid any of these sums. DOC was accordingly authorized under the Restitution Act and under § 16–11–101.6(5) to withhold money from defendant's account to pay them.

## II.

■ We also disagree with defendant's related contention that the Restitution Act applies prospectively only and thus is inapplicable to the costs and fees he was ordered to pay in 1992.

The Restitution Act took effect September 1, 2000, and was to apply to "orders for convictions entered on or after the applicable effective date of this act *and delinquencies of orders existing on or after said date.*" Colo. Sess. Laws 2000, ch. 232, sec. 25(2) (emphasis added).

Defendant's conviction was entered before the effective date of the Act. However, contrary to defendant's contention, the Act applies in his case because his payment obligation under the existing order was delinquent as of that date.

Defendant asserts, in an affidavit submitted for the first time on appeal, that the sentencing court told him he would not have to pay any costs until he got out of prison. This claim is without any support in the record and is belied both by the mittimus and by the fact that fees and costs are, by statute, payable at the time they are assessed, absent a determination of indigency. *See* §§ 16–11–101.6, 16–11–501, 24–4.1–119, 24–4.2–104, C.R.S.2001. Accordingly, a delinquency under the 1992 sentence existed on September 1, 2000.

■ We are also unpersuaded by defendant's contention that the phrase "delinquencies of orders existing on or after [September 1, 2000]" must be construed to refer only to orders in noncriminal cases, so as not to

render the preceding phrase—"orders for convictions entered on or after [September 1, 2001]"—meaningless.

Although the Restitution Act includes provisions for collecting child support, it is part of the criminal code and was enacted for the stated purpose of helping to compensate victims of crime. *See* § 16–18.5–101, C.R.S. 2001. Moreover, construing "delinquencies of orders" in Colo. Sess. Laws 2000, ch. 232, sec. 25(2) to refer to orders in criminal cases does not leave the preceding phrase meaningless. Under sec. 25, the Restitution Act applies to all convictions entered on or after September 1, 2000, but applies to convictions entered before that date only if sums assessed at the time of sentencing remain unpaid.

■ Although defendant asks that we apply the rule of lenity to construe the statute as he urges, that rule is inapplicable where, as here, the statutory language is unambiguous. *See People v. Saucedo,* 796 P.2d 11 (Colo.App.1990).

### III.

Defendant next contends that application of the Restitution Act to him violates constitutional prohibitions against ex post facto laws and double jeopardy. Again, we disagree.

### A.

■ A statute that, after a crime is committed, makes punishment for it more burdensome violates constitutional prohibitions against ex post facto legislation. *People v. Woodward,* 11 P.3d 1090 (Colo.2000).

In *Woodward,* the supreme court declined to decide whether restitution constituted "punishment" for ex post facto purposes. However, even if we assume that it does, there was no ex post facto violation here.

The Restitution Act provides for additional collection mechanisms, but does not increase the face amount of restitution, costs, or other charges that were part of the original sentence.

Defendant contends that the Act nevertheless contains other "punitive" provisions, such as interest and attorney fees as set forth in § 16–18.5–103(4)(b)–(d), C.R.S.2001, which states:

(b) Any order for restitution made pursuant to this section shall also be deemed to order that:

(I) The defendant owes interest from the date of the entry of the order at the rate of twelve percent per annum; and

(II) The defendant owes all reasonable and necessary attorney fees and costs incurred in collecting such order due to the defendant's nonpayment.

(c) The entry of an order for restitution under this section creates a lien by operation of law against the defendant's personal property and any interest that the defendant may have in any personal property.

(d) Any order of restitution imposed shall be considered a debt for "willful and malicious" injury for purposes of exceptions to discharge in bankruptcy as provided in 11 U.S.C. sec. 523.

However, the money being withheld from defendant's account is to pay fees and costs he was ordered to pay in 1992. The 1992 order was not an "order for restitution made pursuant to [§ 16–18.5–103]." Thus, the provisions quoted above for interest, attorney fees, and the like do not apply to him. Recognizing this, the People have represented that interest has not been and will not be collected from defendant on sums he owes under the sentence imposed in 1992.

Thus, because the Act simply facilitates collection from defendant of the sums he was ordered to pay at the time of his sentencing, its application to him does not constitute an ex post facto violation.

### B.

■ An increase in the amount of restitution ordered after sentence has been imposed and the defendant has begun serving it violates double jeopardy protections. *People v. Shepard,* 989 P.2d 183 (Colo.App.1999). However, we have concluded that there has been no increase in the amount of restitution ordered here. Thus, there has likewise been no double jeopardy violation.

### IV.

Finally, we are not persuaded by defendant's contention that application of the Restitution Act breached his plea agreement.

■ The terms of defendant's plea agreement are not part of the record on appeal. Absent record support for defendant's contention, we must presume the regularity of proceedings relating to the plea agreement. *See People v. Ullery*, 984 P.2d 586 (Colo. 1999). Therefore, we presume that the agreement did not include any provision to waive fees or costs, which, as noted, could not be waived in any event under the applicable statutes.

Defendant asserts that the plea agreement is not part of the record because the trial court did not grant his request for a transcript of the providency hearing. However, that does not explain the absence of any written record of the plea agreement. More important, defendant accompanied his notice of appeal in this court with a motion to waive preparation of the record, in which he stated that the attachments to his notice of appeal were "all that are necessary for a determination of this appeal." This statement belies his claim that the providency hearing transcript would support his contention that his plea agreement was breached.

The order is affirmed.

Judge NEY and Judge ROTHENBERG concur.