**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 30, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MICHAEL BACKUS,

      Plaintiff-Appellant,

v.

JOSEPH ORTIZ, Executive Director,
Colo. D.O.C.; DENNIS P. DIAZ,
Controller, Colo. D.O.C.; L. D. HAY,
Director Admin. & Finance, Colo.
D.O.C.,

      Defendants-Appellees.

No. 07-1063

(D.C. No. 05-cv-0497-REB-BNB)
(D. Colorado)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE, EBEL,** and **McCONNELL**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to honor the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is,

therefore, ordered submitted without oral argument.

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Plaintiff Michael Backus (Backus), a Colorado state prisoner appearing pro se, challenges the district court's grant of summary judgment dismissing his 42 U.S.C. § 1983 action against employees of the Colorado Department of Corrections (CDOC) for alleged violations of his constitutional rights. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

**I**

Backus was convicted of first degree murder and conspiracy in Colorado state court, sentenced to life imprisonment, and was ordered to pay over one million dollars in restitution, court costs, and fines (hereinafter, criminal judgment). A state district court subsequently denied Backus' request for the return of funds ($2,652.26) that had been seized during his arrest. That court determined Backus was not entitled to the return of these funds and directed they be transferred to the CDOC for disposition pursuant to Colo. Rev. Stat. § 16-18.5-106, a restitution statute.[1] Accordingly, a Routt County Colorado Assistant District Attorney notified the CDOC of the funds and asserted that the state district court wanted the CDOC to collect 100% of the funds for payment towards

---

[1] In pertinent part, Colo. Rev. Stat. § 16-18.5-106 provides:
(1) Whenever a person is sentenced to the department of corrections, the department of corrections is authorized to conduct an investigation into the financial circumstances of the defendant, as described in section 16-18.5-104(3), for purposes of determining the defendant's ability to pay court ordered costs, surcharges, restitution, time payment fees, late fees, and other fines, fees, or surcharges pursuant to section 16-18.5-110.

Backus' criminal judgment.

Seeking to clarify the extent of its authority under § 16-18.5-106, the CDOC then issued Executive Directive 26-04, stating that the CDOC "may order amounts greater than the minimum twenty percent (up to one-hundred percent) withholding from any inmate's deposit to be applied toward any outstanding order from a criminal case or for child support."[2] Following Executive Directive 26-04, the CDOC applied 100% of the funds towards Backus' criminal judgment. However, the CDOC then reevaluated its authority granted by § 16-18.5-106 and concluded that it was only authorized to take up to 99.9% of incoming deposits. The CDOC thus applied 99.9% of the funds to Backus' criminal judgment, and refunded Backus 0.1% ($2.65).

Backus filed a civil rights action pursuant to 42 U.S.C. § 1983 against the executive director of the CDOC, the CDOC controller, and the CDOC director of administration and finance (Defendants). Backus alleged: (1) due process, equal protection, and ex post facto violations; (2) the existence of a conspiracy among Defendants to deprive Backus of his civil rights; and (3) specifically asserted that the CDOC was only permitted to retain 20% of the funds in question. Backus

---

[2] Executive Directive 26-04 amended CDOC Administrative Regulation 200-15, stating that "[a]t least 20% of all deposits into an inmate's bank account . . . will be deducted and paid toward any outstanding balance . . . resulting from a criminal case [and that] [t]he 20% withholding amount is the minimum withholding required by state law."

3

sought monetary damages, injunctive, and declaratory relief.

Both Backus and Defendants moved for summary judgment. On the recommendation of the magistrate judge, the district court granted Defendants summary judgment, concluding that Defendants were entitled to Eleventh Amendment immunity in their official capacities and qualified immunity in their individual capacities, and concluding further that all of Backus' claims lacked merit.

**II**

Backus raises the following issues on appeal: (1) whether the district court erred in interpreting Colo. Rev. Stat. § 16-18.5-106, and (2) whether it erred in dismissing his due process, equal protection, conspiracy, and ex post facto claims. For the following reasons, we conclude these arguments lack merit.[3]

First, as regards the CDOC's interpretation of the statute, we note that Colorado restitution statutes are to be construed liberally to ensure effective and timely assessment, collection and distribution of restitution. Colo. Rev. Stat. §18-1.3-601(2). Section 16-18.5-106(2) states that the CDOC "may fix the time and manner of payment for court ordered costs, surcharges, restitution, time payment fees, late fees, and any other fines . . . resulting from a criminal case " and authorizes

---

[3] Backus also seeks to challenge the district court's determination that Defendants were entitled to qualified immunity. Because we find that there was no constitutional violation, we need not address the district court's determination regarding qualified immunity.

4

the CDOC to "direct that *a portion* of the deposits into such inmate's bank account be applied to any outstanding balance" from a criminal case. Colo. Rev. Stat. § 16-18.5-106(2) (emphasis added). The only limit on the CDOC's discretion is that "*[a]t a minimum*, the executive director shall order that twenty percent of all deposits into an inmate's bank account, including deposits for inmate pay shall be deducted and paid toward any outstanding order from a criminal case or for child support." Id. (emphasis added). The CDOC interprets this statute as authorizing it to deduct between 20% and 99.9% of incoming deposits into an inmate's account for payment toward court judgments from a criminal case or for child support. While we agree with Backus that the statute is subject to varying interpretations, where statutory language is ambiguous we defer to the interpretation of the agency charged with its enforcement when that interpretation is reasonable. Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843 (1984). Given that the statutory phrase "at a minimum" indicates that the CDOC is authorized to deduct more than 20%, we conclude that the CDOC's interpretation of the statute is reasonable.

Second, we conclude that Backus' equal protection claim lacks merit. To prevail on an equal protection claim, Backus must prove that he was treated differently than similarly situated individuals, and that such disparate treatment was not rationally related to legitimate state interests. Christian Heritage Academy v. Oklahoma Secondary School Activities Ass'n, 483 F.3d 1025, 1031-32 (10th Cir. 2007). Here, the district court dismissed Backus' equal protection claim because he

5

did not provide any evidence to establish that any other inmates are similarly situated to him. Backus failed to provide evidence that other inmates had funds confiscated from them at the time of their arrest, that the trial court issued an order stating that they were not entitled to the return of the funds and directing the CDOC to dispose of the money pursuant to section § 16-18.5-106, and that the CDOC applied the money to criminal judgments pursuant to that statute. Additionally, we see no merit in Backus' argument that there is a factual dispute over whether the district court intended for the CDOC to deduct 20%, 99.9%, or 100% of the funds in question.

Third, we conclude that Backus' due process claim fails because he has received all the process he was due. The deprivation at issue here was occasioned originally by a seizure during Backus' arrest and then by a restitution order imposed as a part of his criminal sentence imposed after his conviction. After Backus sought return of the funds at issue, as well as other property that had been seized, the state district court ordered briefing from the State, and Backus filed a reply. The court then ordered the State to inform the CDOC of the funds held "so that disposition of the same may be made pursuant to C.R.S. 16-18.5-106." Appx. Vol. 1, Doc. 26, Ex. A-2. The state district court entered this order after providing Backus an opportunity to present his written arguments to the court. The process provided here was sufficient. See Matthews v. Eldridge, 424 U.S. 319, 332-35 (1976).

6

We also reject Backus' claim that Colo. Rev. Stat. § 18-1.3-603[4] violates the Ex Post Facto Clause. "The Ex Post Facto Clause prohibits states from passing laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." Boutwell v. Keating, 399 F.3d 1203, 1215 (10th Cir. 2005). A law violates the Ex Post Facto Clause if the law (1) applies to events occurring before it was enacted, and (2) disadvantages the petitioner by changing the definition of criminal conduct or increasing the sentence for the criminal conduct. Smith v. Scott, 223 F.3d 1191, 1194 (10th Cir. 2000) (citations omitted). We have "rejected the argument that the Ex Post Facto Clause applies to restitution, because the purpose of restitution is not punishment." United States v. Overholt, 307 F.3d 1231, 1254 (10th Cir. 2002), see also People v. Lowe, 60 P.3d 753, 757 (Colo. App. 2002) (concluding that "because the [Restitution] Act simply facilitates collection from defendant of the sums he was ordered to pay at the time of his sentencing, its application to him does not constitute an ex post facto violation"). We agree with the district court that Colo. Rev. Stat. § 18-1.3-603 does not affect the crime for which Backus was indicted, the punishment prescribed therefor, or the quantity or degree of proof necessary to establish guilt. Instead, § 18-1.3-603 merely establishes procedures to facilitate the collection of restitution, costs, and other charges that

---

[4] In pertinent part, Colo. Rev. Stat. § 18-1.3-603(4)(b)(I) states that "[a]ny order for restitution made pursuant to this section shall also be deemed to order that . . . [t]he defendant owes interest from the date of the entry of the order at the rate of twelve percent per annum."

7

were imposed as a part of Backus' original sentence.[5]

Finally, to succeed on a claim for conspiracy to deprive a plaintiff of his constitutional rights, Backus must prove both the existence of the conspiracy and the deprivation of constitutional rights. Thompson v. City of Lawrence, 58 F.3d 1511, 1517 (10th Cir. 1995). Again, we agree with the district court that this claim fails. Here, the record is void of evidence that Defendants conspired to violate Backus' constitutional rights. Instead, the record demonstrates only a concerted effort to apply Backus' funds to the payment of the criminal judgment entered against him.[6]

Accordingly, the judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

---

[5] To the extent Backus claims that Executive Directive 26-04, amending Administrative Regulation 200-15, violates the Ex Post Facto Clause or evinces a constitutional violation, this claim also fails. That the CDOC amended the language of its regulation to clarify its discretion does not change the fact that it already had discretion to withhold more than 20% of an inmate's deposit under the language of the statute and of its initial regulation.

[6] Backus also raises issues regarding the Colorado Contraband Forfeiture Act. Some of these arguments were not meaningfully raised before the district court, therefore, we decline to address them, and, in any event, we fail to see the applicability of that Act to the facts or claims raised herein. See Hill v. Kan. Gas Serv. Co., 323 F.3d 858, 865-66 (10th Cir. 2003) (declining to address arguments for the first time on appeal).