Barry Lee LAPP, Appellant,

v.

STATE of Alaska, Appellee.

No. A–9778.

Court of Appeals of Alaska.

Nov. 20, 2009.

Kenneth L. Covell, Fairbanks, for the Appellant.

Diane L. Wendlandt, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## *OPINION*

BOLGER, Judge.

In 1995, Barry Lee Lapp was convicted of manslaughter and five counts of assault. Superior Court Judge Niesje J. Steinkruger entered an order requiring Lapp to pay approximately $85,000 in restitution to the victims of his crimes, and to pay 10% of his wages toward restitution "until all victims are fully paid." When Lapp failed to pay the full restitution during his probation, the judge entered a civil judgment for the balance. Lapp asserts that the superior court had no authority to enter this civil judgment for the remainder of the restitution because the judgment violated his rights to due process, his protection against double jeopardy, and constitutional restrictions on ex post facto laws. Lapp also argues that the civil judgment was barred by the doctrine of equitable estoppel. We conclude that the 2001 amendment to the restitution statute was merely a procedural change that did not violate the restriction on ex post facto laws, and that the judgment itself did not increase Lapp's punishment in a way that violated due process or the protection against double jeopardy. We also conclude that the superior court's failure to sua sponte recognize the issue of estoppel was not plain error.

### Background

On September 16, 1994, Lapp recklessly caused an automobile collision that killed one person and seriously injured several others. Lapp pleaded no contest under a plea agreement, and on April 20, 1995, he was convicted of manslaughter,[1] five counts of felony assault,[2] and driving while intoxicated.[3] Lapp was then sentenced to 10 years' imprisonment with 2 years suspended. A hearing was scheduled to determine the amount that Lapp would have to pay for restitution, but before the hearing began, Lapp agreed to a stipulation to pay restitution totaling $86,455.87 to his four victims. This stipulation was used by Judge Steinkruger as a basis for a restitution order.

The restitution order included a stipulated payment schedule and stated that the restitution provisions "shall be part of the sentencing judgment previously entered in this matter." The judgment incorporated this restitution order, but also made restitution a condition of Lapp's probation.

On May 4, 2000, Lapp began serving his 5 years of probation. During his probation, Lapp presented pay stubs to his probation officers, who then told Lapp the amount he should pay in restitution. Lapp complied with the terms of his probation, which included making all of the payments his probation officers directed him to pay. By May 4, 2005, Lapp had completed his probation. However, during that five-year span, Lapp had only paid $15,750 in restitution. By September 16, 2005, Lapp had stopped making his restitution payments. He was contacted by his probation officer about his fail-

---

1. AS 11.41.120(a)(1).

2. AS 11.41.210(a) and AS 11.41.220(a)(1)(A) & (B).

3. AS 28.35.030(a)(1) & (2).

ure to make payments, and a week later the State petitioned to revoke his probation.

On February 24, 2006, Judge Steinkruger scheduled an evidentiary hearing to determine whether Lapp had violated his probation. The judge suggested that it might be possible to convert Lapp's restitution order into a civil judgment. The judge wrote the following notation on the scheduling order:

> It appears that the State's only remedy is for the remaining restitution owed to be treated as a civil judgment. This assumes the State does not contest the defendant paid 10% of wages as the State and defendant agreed to. Therefore, at the above hearing the court will consider whether the State is in agreement, i.e., that the State does not contest the defendant was not in violation regarding restitution during the five years of probation.

At the April 5, 2006 hearing, the State requested that the restitution order be converted into a civil judgment. Despite Lapp's objections, Judge Steinkruger allowed the State to lodge a civil judgment to enforce the "total amount of restitution still owed." In her ruling, Judge Steinkruger relied on the 2001 amendment to the restitution statute, particularly including AS 12.55.045($l$), which provides that a restitution order in a criminal case "is a civil judgment for the amount of the restitution." Judge Steinkruger also ruled that the 2001 amendment did not violate any constitutional principles or breach Lapp's plea agreement.

Pursuant to this ruling, the State submitted accounting records which detailed Lapp's payments and established that Lapp still owed $70,705.87 in restitution. Judge Steinkruger then issued a civil judgment for that amount, which Lapp now appeals.

### Did the Civil Judgment Violate Double Jeopardy?

██ Under the double jeopardy clauses of the state and federal constitutions, "once a sentence has been meaningfully imposed, it may not, at a later time, be increased."[4]

Lapp contends that the 1995 judgment of conviction only obligated him to make restitution as a condition of his probation, so that entering a civil judgment in 2006 for the remaining restitution was an increase in his punishment. Citing *Shagloak v. State*,[5] Lapp also argues that the same circumstances violated his right to substantive due process.

██ Thus, we must examine the judgment and associated documents to determine whether Lapp's obligation to pay restitution was only a condition of his probation, or whether it was also an independent component of his sentence. When we construe a judgment, we primarily seek to ascertain the sentencing judge's intention as stated in the contemporaneous sentencing record.[6] When we review the judgment and contemporaneous sentencing documents in this case, it is apparent that restitution was not only a condition of Lapp's probation, but also an independent component of the judgment.

Analyzing the judgment itself, the list of probation conditions includes the following items:

> 15. The defendant shall pay restitution as set forth in the Restitution Order entered in this case which is incorporated herein by reference.

> 16. The restitution ordered is a condition of probation and a part of this judgment.

Thus, the judgment explicitly states that, in addition to being a condition of probation, the restitution was also intended to be an independent part of the judgment.

This construction is also supported by the language of the separate restitution order, which requires the payment of a stated amount of restitution to each victim using the following language: "It is hereby ordered that the defendant shall pay restitution under Count [X] to [Victim A] in the sum of [$XX,XXX]." In a separate section, the order requires Lapp to make monthly payments of 10% of his gross wages.

---

**4.** *Sonnier v. State*, 483 P.2d 1003, 1005 (Alaska 1971).

**5.** 597 P.2d 142, 145 (Alaska 1979).

**6.** *Alvin v. State*, 42 P.3d 1156, 1159 (Alaska App. 2002).

Another section of the restitution order provides for the distribution of the restitution payments. The order specifies that the restitution payments will be distributed in equal amounts to each victim "until the first victim is fully paid," and then continues,

Thereafter, the payments shall be distributed to the remaining unpaid victims, on an equal percentage basis, until an additional victim is fully paid. Such procedure of distribution shall continue *until all victims are fully paid.*[7]

Finally, the order provides "that these provisions concerning restitution shall be part of the sentencing judgment previously entered in this matter."

Thus, the language of the order is inconsistent with the idea that restitution would be limited to the term of probation. There is no mention of probation in the restitution order. Restitution was not scheduled to terminate after the term of probation, but rather, was ordered to continue "until all victims are fully paid." And the explicit direction that the order is "part of the sentencing judgment" shows that the order was not only a probation condition, but was specifically intended to be a separate component of the judgment.

■ Furthermore, this construction is also consistent with the language of the stipulation between the parties. When construing an agreement between parties, we use ordinary principles of contract interpretation,[8] attempting to give effect to the reasonable expectations of the parties considering the language of the contract as well as relevant extrinsic evidence.[9]

Here, the parties agreed in the stipulation that payments should be made to each victim using the following language: "The victim should pay restitution under Count [X] to [Victim A] in the sum [$XX,XXX]." The stipulation included the agreement that the defendant would make restitution payments in monthly amounts of 10% of his gross wages. The stipulation also included the parties' agreement to the same distribution that was ordered by the court, which specified that: "Such procedure of distribution should continue *until all victims are fully paid.*"[10]

Like the terms specified in the restitution order, the terms of the stipulation are inconsistent with the termination of restitution after probation has been completed. The stipulation does not mention probation, and the parties agreed that restitution should continue "until all victims are fully paid."

■ Lapp argues that the superior court did not have the authority to impose restitution as an independent component of the 1995 judgment. He relies on *R.I. v. State,*[11] where we held that the 1995 juvenile delinquency statutes did not authorize the superior court to enter a civil judgment for restitution.[12] But in *R.I.,* we expressly recognized that, in criminal prosecutions, a sentencing court could order a convicted defendant to pay restitution either as an independent component of the sentence, or as a condition of probation.[13] We also recognized that the restitution statute authorized crime victims to pursue execution on a restitution order as if it were a civil judgment.[14] The superior court was therefore acting within its authority when it imposed Lapp's restitution order as an independent component of his judgment.

In summary, under the 1995 stipulation and restitution order, the restitution obligation was intended to operate as an independent component of Lapp's sentence, not just as a condition of his probation, and Lapp's obligation continued until all of the victims were fully paid.

■ We now turn to the validity of the civil judgment that the superior court en-

---

7. Emphasis added.

8. *Logghe v. Jasmer,* 686 P.2d 694, 697 (Alaska 1984).

9. *Sowinski v. Walker,* 198 P.3d 1134, 1143–44 (Alaska 2008).

10. Emphasis added.

11. 894 P.2d 683 (Alaska App.1995).

12. *Id.* at 686.

13. *Id.* at 685.

14. *Id.* at 685 n. 2.

tered in 2006. The civil judgment required Lapp to pay the balance of restitution to the two remaining victims. The first paragraph of the judgment provided:

> 1. The defendant shall pay restitution to the following recipient(s) for the amounts shown below:

| Restitution Recipients | Amount |
| --- | --- |
| A. Robert White | $47,858.76 |
| B. Bryan Wade | $22,847.11 |
| TOTAL AMOUNT DUE | $70,705.87 |

The civil judgment thus required Lapp to pay no more than the original restitution order required—that is, to pay restitution to the victims until they were paid in full.

Lapp argues that the superior court's entry of this judgment violated the prohibition against double jeopardy based on our decision in *Kelly v. State*.[15] In *Kelly*, the superior court originally imposed restitution only as a condition of probation.[16] But after revoking the defendant's probation, the court also tried to enforce the restitution condition as an independent component of the judgment.[17] We concluded that the imposition of the civil judgment independent of Kelly's probation was an increase in punishment in violation of the protection against double jeopardy.[18]

But in *Kelly*, we also recognized that it would have been permissible for the original sentencing judge to require payment of restitution both as a condition of probation and also as an independent component of the judgment.[19] That was exactly what happened in Lapp's case: the obligation to make restitution to his victims was an independent component of his judgment imposed at the time he was originally sentenced. Accordingly, the entry of the 2006 civil judgment

did not increase Lapp's punishment. At most, it altered the procedures by which the victims could enforce the preexisting restitution obligation. Thus, Lapp's right to protection against double jeopardy has not been violated because the 2006 civil judgment did not create any new restitution obligation.

### Was the 2001 Restitution Statute an Ex Post Facto Law?

 Judge Steinkruger relied on the 2001 amendment to the restitution statute when she entered the civil judgment against Lapp in 2006. Lapp now argues that application of the 2001 statute to his case violates the ex post facto clauses of the state and federal constitutions because his offenses were committed before 2001.[20]

 The ex post facto clauses forbid a legislature from enacting:

> any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission; or which deprives one charged with a crime of any defense available according to law at the time when the act was committed.[21]

This provision forbids "the retrospective application of laws that 'alter the definition of crimes or increase the punishment for criminal acts.'"[22] But "the ex post facto clause does not bar retrospective application of merely procedural amendments."[23] So the initial question that we must address is whether the 2001 amendment to the restitution statute increased the substantive "quan-

---

15. 842 P.2d 612 (Alaska App.1992).

16. *Id.* at 613.

17. *Id.*

18. *Id.* at 614.

19. *Id.* at 613–14.

20. We must apply our independent judgment to determine whether a statute violates the constitution. *Doe v. State*, 189 P.3d 999, 1003 (Alaska 2008).

21. *Ortiz v. State*, 173 P.3d 430, 431 (Alaska App. 2007) (quoting *State v. Anthony*, 816 P.2d 1377, 1378 (Alaska 1991)).

22. *Amin v. State*, 939 P.2d 413, 416 (Alaska App. 1997) (quoting *Collins v. Youngblood*, 497 U.S. 37, 43, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990)).

23. *Stoneking v. State*, 39 P.3d 522, 524 (Alaska App.2002).

tum of punishment" Lapp received for his conviction.[24]

Lapp's argument assumes that the restitution order was unenforceable after he completed his term of probation. To address this argument, we must analyze the restitution statute in effect when Lapp committed his several felonies in 1994. At the time of Lapp's offenses in 1994, the restitution statute provided:

> [A] restitution recipient may enforce payment of a restitution order against a defendant under AS 09.35 *as if the order were a civil judgment* enforceable by execution. This subsection does not limit the authority of the court to enforce ... orders of restitution to victims.[25]

In 1994, civil judgments were enforceable by execution under AS 09.35.010. Nothing in the execution statute limited the enforcement of a restitution obligation to the term of the debtor's probation.[26] So when former AS 12.55.051(d) stated that restitution orders could be enforced as if the orders were civil judgments, that provision implied that restitution could be enforced beyond the period of probation.

This aspect of the Alaska statute was consistent with the preexisting common law principle that the government may seek civil execution of a fine in a criminal case.[27] Under this rule, a court could enforce the payment of a fine even after the expiration of a sentence of imprisonment.[28] Following this same common law principle, courts interpreting similar statutory schemes have held that the sentencing court can enforce restitution

as an independent component of the judgment even after the defendant's terms of imprisonment and probation have expired.[29] We likewise conclude that there was nothing in the 1994 restitution statute that limited the enforcement of restitution to the defendant's term of probation if restitution was ordered as an independent component of the judgment.

We now turn to the 2001 amendment to the restitution statute. In 2001, the legislature amended the statute by adding a section that provided in part, that "[a]n order by the court that the defendant pay restitution is a civil judgment for the amount of the restitution."[30] This language took effect on January 1, 2002, and was intended to apply to all "judgments or orders of restitution entered in adjudications of delinquency of minors or in criminal cases before, on, or after the effective date" of the legislation.[31]

In summary, before the 2001 amendment, the restitution statute stated that a restitution order could be enforced "*as if the order were* a civil judgment."[32] After the 2001 amendment, the statute stated that a restitution order "*is* a civil judgment."[33] It is unclear why the legislature believed that this language should be changed. But it is clear that the new language was intended to reaffirm crime victims' preexisting right to enforce restitution obligations through civil execution. If this amendment changed the law in any fashion, it was a procedural change in the enforcement mechanism for the judgment; it was not a substantive increase in the quantum of punishment.

---

**24.** *See Ortiz,* 173 P.3d at 431–32.

**25.** Former AS 12.55.051(d) (1994) (emphasis added).

**26.** *See* former AS 09.35.020 (1994).

**27.** *See Hudmon v. Coonfield,* 239 Ark. 1063, 396 S.W.2d 296, 296–97 (1965); *Smith v. Whatcom County Dist. Court,* 147 Wash.2d 98, 52 P.3d 485, 490 (2002) (citing *The King v. Woolf,* 1 Chit. 401, 438–39 (K.B.1819)).

**28.** *See Ex parte Vendetti,* 6 Alaska 381, 383 (D.Alaska. Terr.1921).

**29.** *State v. Brown,* 342 Mont. 476, 182 P.3d 75, 79 (2008); *State v. Joseph,* 238 N.J.Super. 219,

569 A.2d 819, 821 (1990); *Commonwealth v. Mourar,* 349 Pa.Super. 583, 504 A.2d 197, 208 (1986); *State v. Gullickson,* 659 N.W.2d 388, 390–91 (S.D.2003); *State v. Dickey,* 841 P.2d 1203, 1207–08 (Utah App.1992).

**30.** AS 12.55.045(*l*). The legislature also amended subsection AS 12.55.051(c), which authorizes the Department of Law to collect restitution on behalf of a recipient.

**31.** Ch. 92, §§ 45, 50, SLA 2001.

**32.** Former AS 12.55.051(d) (1994) (emphasis added).

**33.** AS 12.55.045(*l*) (emphasis added).

To argue that applying the 2001 statute was an improper ex post facto application of the law, Lapp relies on *Ortiz v. State*,[34] where we ruled that retrospective application of an amendment to the restitution statute constituted an ex post facto law.[35] At the time that Ortiz committed his crime, AS 12.55.045 allowed the sentencing judge to consider the defendant's ability to pay restitution.[36] But this statute was amended in 2004 by removing the judge's discretion to consider the defendant's ability to pay.[37] We concluded that retrospective application of this amendment to the restitution statute violated the ex post facto clause.[38]

In Lapp's case, however, the enactment of AS 12.55.045(*l*) did not operate to change the amount of restitution or the nature of Lapp's obligation to his victims, nor did it alter the factors that the superior court was to consider when setting restitution. Both before and after the 2001 amendments, a restitution order was enforceable as a civil judgment.

In *People v. Lowe*,[39] the Colorado Court of Appeals addressed a similar case considering the retrospective application of a law allowing for the civil enforcement of criminal restitution orders.[40] In *Lowe*, the defendant had been imprisoned for eight years when the Colorado General Assembly enacted a restitution statute allowing the Colorado Department of Corrections to collect or withhold 20% of the deposits into inmates' accounts to satisfy their delinquent restitution obligations.[41] The Colorado court held that this amendment to the restitution statute did not constitute an ex post facto law because the amendment "simply facilitate[d] collection from defendant of the sums he was ordered to pay at the time of his sentencing." [42]

Likewise, the 2001 amendment to AS 12.55.045 was at most a procedural change to facilitate the collection of restitution rather than a substantive change in the amount or nature of the restitution obligation. The amendment did not "alter the definition of criminal conduct or increase the penalty," and therefore applying this amendment to Lapp does not violate the ex post facto clause.[43]

### Did the Civil Judgment Violate Due Process?

 Lapp also makes three arguments that the judge's 2006 entry of the civil judgment amounted to a denial of procedural due process. First, Lapp argues that the judge was not impartial because she suggested that the State abandon its petition to revoke probation and request that the restitution order be converted to a civil judgment. Although Lapp does not cite any cases in support of this argument, a judge's comments during litigation will generally not disqualify the judge unless the comments "display clear inability to render fair judgment." [44] Judge Steinkruger's suggestion in this case is not the sort of comment that would violate this standard. Indeed, the judge's comment also favored Lapp because she clearly discouraged the State's request to revoke Lapp's probation.

 Second, Lapp argues that the superior court ignored his request for discovery. But Lapp's request did not include a request for any specific information about the restitution calculation. Ordinarily, a party must move for a court order compelling discovery in order to preserve this type of request as an issue for appeal.[45] We conclude that

---

34. 173 P.3d 430.

35. *Id.* at 433.

36. *Id.* at 431.

37. *Id.*

38. *Id.* at 433.

39. 60 P.3d 753 (Colo.App.2002).

40. *Id.* at 757–58.

41. *Id.* at 757.

42. *Id.*

43. *See Stoneking*, 39 P.3d at 524.

44. *Hanson v. Hanson*, 36 P.3d 1181, 1184 (Alaska 2001) (quoting *Liteky v. United States*, 510 U.S. 540, 551, 114 S.Ct. 1147, 1155, 127 L.Ed.2d 474 (1994)).

45. *Marino v. State*, 934 P.2d 1321, 1327 (Alaska App.1997).

Lapp has waived this claim by failing to request a ruling from the superior court.

■ Third, Lapp argues that the superior court entered the restitution judgment without holding a hearing. This issue requires some review of the trial court record. The State filed a motion to set the restitution amount at $72,105.87. In response, Lapp filed a motion to strike, arguing that the State's motion was unsupported. Then, the State filed an opposition to the motion to strike supported by records from Lapp's probation officer detailing Lapp's payments and the resulting restitution balance. A few days later the State amended its request, proposing a judgment requiring distributions to the remaining victims in the total amount of $70,705.87.

After the State filed the records that supported its restitution request, Lapp could have filed an opposition to the motion to set the restitution amount, a reply memorandum in support of his motion to strike, or a request for a hearing.[46] But Lapp did not file anything with the superior court (or in this appeal) indicating that he contested the amount of restitution that the State requested. We conclude that Lapp has waived his right to a hearing on this issue by his failure to request a hearing when he had the opportunity to do so,[47] as well as by his failure to show any grounds for disputing the State's proposed amount of unpaid restitution.

Accordingly, we reject Lapp's arguments on this point and conclude that Lapp was not denied due process.

## Was the State's Claim for Restitution Barred by Equitable Estoppel?

■ Lapp also argues that the State's claim for restitution is barred by equitable estoppel. To establish equitable estoppel against the State, the defendant must show that "(1) the governmental body assert[ed] a position by conduct or words; (2) the private party act[ed] in reasonable reliance thereon; (3) the private party suffer[ed] resulting prejudice; and (4) the estoppel serves the interest of justice so as to limit public injury."[48] Lapp argues that the State has made three assertions justifying estoppel: (1) the prosecutor drafted the restitution order after negotiations with defense counsel; (2) during Lapp's probation, his probation officer determined Lapp's required restitution payments based on his pay stubs; and (3) the probation officer did not move for modification of the payment schedule. Because Lapp did not assert equitable estoppel in the superior court, he has waived the issue on appeal unless it was plain error for the superior court to fail to recognize this issue.[49]

■ Lapp has not established plain error. Governmental decisions not to pursue prosecution or enforcement generally are not "assertions" sufficient to support a defense of estoppel.[50] In other words, the fact that the probation officer calculated restitution payments consistent with Lapp's restitution order was not an assertion that the State would give up the provisions that required Lapp to continue his payments until all of the victims were paid in full.[51] Thus, Lapp cannot establish that the superior court's failure to recognize the defense of equitable estoppel was a plain or obvious error.

## Conclusion

We conclude that the entry of a civil judgment for the unpaid portion of the restitution

**46.** See Alaska R.Crim. P. 42(c) & (e).

**47.** See DeNardo v. Maassen, 200 P.3d 305, 315 (Alaska 2009) ("A party may waive the right to an evidentiary hearing on disputed material questions of fact by failing to request one before the court rules on the matter.").

**48.** Boyd v. State, Dep't of Commerce and Econ. Dev., 977 P.2d 113, 116–17 (Alaska 1999) (quoting Crum v. Stalnaker, 936 P.2d 1254, 1256 (Alaska 1997)).

**49.** See Kaiser v. Umialik Ins., 108 P.3d 876, 881 (Alaska 2005).

**50.** See State, Dep't of Commerce and Econ. Dev. v. Schnell, 8 P.3d 351, 356 (Alaska 2000); Grunert v. State, Commercial Fisheries Entry Comm'n, 735 P.2d 118, 122–23 (Alaska 1987).

**51.** Cf. Hodges v. State, 158 P.3d 864, 866 (Alaska App.2007) ("[A] sentencing judge must consider a defendant's ability to pay ... when the judge determines the schedule and the amount of the defendant's payments.").

did not increase Lapp's punishment for his offenses or alter Lapp's legal position in any way that violated due process, the protection against double jeopardy, or the ex post facto clauses of the state and federal constitutions.

We therefore AFFIRM the superior court's judgment.