Joseph **JAMES**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. A–9785.

Court of Appeals of Alaska.

Jan. 7, 2011.

---

Paul Malin, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Marilyn J. Kamm, Assistant Attorney General, and Daniel S. Sullivan, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, BOLGER, Judge, and STEWART, Senior Court of Appeals Judge.*

### OPINION

BOLGER, Judge.

When the Alaska Parole Board released Joseph James on mandatory parole, the Board imposed several special conditions, including the requirement that he participate in sex offender treatment. In March 2005, James appealed to the superior court, contending that the special conditions were unconstitutional. In December 2005, the Board revoked James's parole because he did not satisfy the sex offender treatment condition. In January 2006, James appealed the parole revocation and moved to consolidate his first appeal with the appeal challenging his parole revocation. The superior court upheld James's conditions of parole and denied James's motion to consolidate. We conclude that the Parole Board was authorized to impose special conditions on James's mandatory parole release. We also conclude that the superior court did not abuse its discretion when it denied James's motion to consolidate his appeals.

### Background

In 1979, Joseph James was convicted of committing lewd acts against a child under the age of sixteen and spent three years in prison.[1] While James was on furlough in 1984, he attempted to sexually assault a woman, forced fellatio on a ten-year-old boy, and had sexual contact with a nine-year-old girl.

James was then charged and convicted of attempted sexual assault in the second degree and three counts of sexual abuse of a minor. Superior Court Judge Jay Hodges sentenced James to thirty years to serve with an additional eighteen years suspended. Judge Hodges's sentence included several conditions of probation. Judge Hodges ordered James to refrain from excessive drinking, submit to urine or blood analysis, allow a probation officer to search him, not have contact with minor children outside the presence of another adult, and meet several other requirements. The probation conditions did not expressly include sex offender treatment.

Prior to James's release on mandatory parole in 2005, James's probation officer submitted a request to the Parole Board for supplemental conditions of mandatory parole. The Board notified James of the special conditions of his parole, but James submitted written objections to the conditions. The Board declined to modify the conditions, which included a condition that required James to participate in sex offender treatment and education classes. On March 26, 2005, James appealed the Board's decision to impose special conditions on his parole.

After his release, James missed a sex offender education class and refused to cooperate with his treatment. On December 8, 2005, the Board revoked James's parole and ordered him to serve ten years, the amount of his earned good time. On January 19,

---

* Sitting by assignment made pursuant to article IV, section 11, of the Alaska Constitution and Alaska Administrative Rule 23(a).

1. For a complete history of the somewhat complicated procedural posture and facts of this case, see *James v. State*, 730 P.2d 811 (Alaska App.1987) (*James I*); *James v. State*, 739 P.2d 1314 (Alaska App.1987) (*James II*); *James v. State*, 754 P.2d 1336 (Alaska App.1988) (*James III*).

2006, James filed a notice of appeal in superior court, contesting the parole revocation. At the same time, James moved to consolidate this new appeal with the appeal he filed in March 2005. Superior Court Judge Peter A. Michalski denied James's motion to consolidate the appeals.

Judge Michalski ultimately upheld the Board's special conditions on James's parole. James appeals Judge Michalski's decision, raising several constitutional challenges to the Parole Board's decision to impose the special conditions of mandatory parole.

 In this case the superior court acted as an intermediate court of appeal; we independently review the Parole Board's decision.[2] We review the denial of a motion to consolidate for abuse of discretion.[3]

### Discussion

*The Parole Board was authorized to impose special conditions on James's mandatory parole.*

The legislature originally enacted the relevant parole and good-time statutes in 1960. At that time, the good-time statute provided that a prisoner released on good-time deductions with more than 180 days remaining to serve "shall be deemed as if released on parole."[4] The Parole Administration Act provided that a parolee's release was subject to "such terms and conditions ... as the [Parole Board] may prescribe."[5] This relevant statutory language remained unchanged in 1979 and 1984 when James was sentenced for his crimes.[6]

In *Braham v. Beirne,* this court recognized that prisoners "who are released mandatorily under [the good-time statute] with greater than 180 days to serve under their sentences are released 'as if released on parole.' "[7] Therefore, we held that the Board has the authority to set special conditions of parole for mandatory parolees, and that the Board may revoke the parole of mandatory parolees for violation of the special conditions.[8]

In 1985, the legislature repealed the 1960 Parole Administration Act[9] and enacted a new chapter on parole administration.[10] The 1985 statute expressly codifies a list of parole conditions that the Board can impose on discretionary or mandatory parolees.[11] The legislature also added a new statutory provision that clarified the distinction between discretionary and mandatory parole.[12] When the House Judiciary Committee addressed the 1985 statute, it indicated that it "intend[ed] the provisions of AS 33.16.010 relating to Parole to offer a system of discretionary and mandatory parole consistent with the holding in *Braham v. Beirne,* ... whereby both [the mandatory and discretionary parole] systems are the same except as to how the offender is placed on parole."[13]

*The special conditions of parole in the 1985 statute did not violate the ex post facto clauses.*

 James argues that his special conditions of parole are based on the current parole statute, enacted in 1985. He argues that these conditions violate the prohibition on ex post facto laws because this statute was not effective when he was convicted in 1979 and 1984. The ex post facto clauses of the state and federal constitutions prevent the legislature from enacting a statute that

2. *Kuzmin v. State, Commercial Fisheries Entry Comm'n,* 223 P.3d 86, 88 (Alaska 2009).

3. *C.L. v. P.C.S.,* 17 P.3d 769, 772 (Alaska 2001).

4. Ch. 107, § 4, SLA 1960.

5. Ch. 81, § 8, SLA 1960.

6. *See* former AS 33.20.040(a) (1982 & Supp. 1983–1984); former AS 33.15.190 (1982 & Supp. 1983–1984).

7. *Braham v. Beirne,* 675 P.2d 1297, 1300 (Alaska App.1984).

8. *Id.*

9. Former AS 33.15 (1982).

10. Ch. 88, §§ 2, 7, SLA 1985 (enacting AS 33.16 and repealing AS 33.15).

11. AS 33.16.150.

12. AS 33.16.010.

13. 1985 House Journal 821.

retroactively makes the punishment for a crime more burdensome.[14]

As noted above, beginning in 1960, the Parole Board was authorized to impose special conditions of parole. Such conditions could include "residential, employment, and reporting requirements as well as prohibition of activities which would otherwise be lawful (for example, drinking alcoholic beverages)."[15] Such conditions were valid as long as they were reasonably related to the parolee's rehabilitation and the underlying offense.[16]

James does not argue that his special parole conditions were unrelated to his offense, his prior record, or his rehabilitation. Instead, he argues that, before 1985, the Parole Board was not authorized to impose any special conditions of parole on those released on mandatory parole after deduction of good-time credits. But we have already decided this issue in *Braham:* the Parole Board was authorized to set special conditions of mandatory parole when James committed his offenses in 1979 and 1984, based on the statutes enacted in 1960.[17] Therefore, the enactment of a new parole statute in 1985 did not increase James's punishment in a way that violated the ex post facto clauses.

*The special parole conditions imposed when James was released in 2005 did not constitute double jeopardy.*

James argues that the special conditions on his 2005 parole constituted double jeopardy because they imposed a second punishment for his offenses in addition to the probation conditions originally imposed by the sentencing judges. The double jeopardy clauses of the state and federal constitutions forbid any increase in a sentence after it has been meaningfully imposed.[18] But generally, the revocation of parole does not constitute double jeopardy because the authority to impose and revoke parole is inherent in a criminal sentence.[19]

Again, James's success depends on his contention that the Parole Board lacked the authority to impose special conditions for those released on mandatory parole. But the authority for the Parole Board to impose special conditions on a mandatory parolee was based on statutes in effect since 1960. Therefore, the special conditions imposed on James's parole release were inherent in the criminal judgments imposed by the sentencing courts when James was convicted in 1979 and 1984. Since these conditions were authorized by James's original sentences, they did not increase his sentence when they were imposed in 2005.

*The special conditions imposed by the Parole Board did not violate the doctrine of separation of powers.*

James argues that the imposition of special conditions by the Parole Board (rather than the court) violates the doctrine of separation of powers. The separation of powers doctrine safeguards the independence of each of the three branches of government by limiting the authority of each branch to interfere with powers that have been delegated to the other branches.[20] This doctrine "requires that the blending of governmental powers will not be inferred in the absence of an express constitutional provision."[21]

The text of the constitution does not support James's arguments that parole conditions are part of a function constitutionally entrusted to the judiciary. There is an express constitutional provision regarding the parole system in the constitutional article defining the powers of the executive branch: "Subject to procedure prescribed by law, the

---

**14.** *Lapp v. State,* 220 P.3d 534, 539 (Alaska App. 2009).

**15.** *Morton v. Hammond,* 604 P.2d 1, 3 (Alaska 1979).

**16.** *Roman v. State,* 570 P.2d 1235, 1240 (Alaska 1977).

**17.** *Braham,* 675 P.2d at 1300.

**18.** *Lapp,* 220 P.3d at 537.

**19.** *Hill v. State,* 22 P.3d 24, 29 (Alaska App.2001) (citing *Reyes v. State,* 978 P.2d 635, 639 (Alaska App.1999)).

**20.** *Alaska Pub. Interest Research Grp. v. State,* 167 P.3d 27, 35 (Alaska 2007).

**21.** *Bradner v. Hammond,* 553 P.2d 1, 7 (Alaska 1976).

governor may grant pardons, commutations, and reprieves, and may suspend and remit fines and forfeitures. This power shall not extend to impeachment. A parole system shall be provided by law."[22] There is no similar provision discussing any aspect of parole administration in the article defining the judicial branch.

■ Moreover, we have previously recognized that the sentencing function is not assigned to the exclusive jurisdiction of either the judicial or the executive branch: "The administration of probation is the responsibility of the judicial branch, whereas the administration of parole is the responsibility of the executive branch."[23] While "the superior court has broad authority over the conditions of a defendant's probation, another governmental body—the Board of Parole—controls the conditions of a defendant's parole."[24] The imposition of special conditions of parole by the Parole Board is consistent with this constitutional grant of authority. Therefore, the imposition of conditions of parole by the Parole Board does not violate the doctrine of separation of powers.

*James has not established a violation of his privilege against self-incrimination.*

■ James argues that the special conditions requiring him to participate in sex offender treatment violate his privilege against self-incrimination. It is true that the state may not revoke probation or parole in response to a valid invocation of the privilege against self-incrimination.[25] But James did not raise this argument in his brief on appeal to the superior court. He has therefore abandoned this argument.[26]

■ Even if James had preserved this argument, he would not prevail. A parolee cannot validly invoke the privilege against self-incrimination when there is no realistic threat of incrimination.[27] In order to show a violation of the privilege, James must show that his parole conditions required him to make statements that would subject him to a realistic threat of incrimination. But the State granted James transactional immunity for any statements he was required to make during treatment.

Because he received immunity from prosecution, James did not face any realistic threat of incrimination. He therefore has not established that his parole conditions violated his privilege against self-incrimination.

*James has not shown that Judge Michalski abused his discretion when he denied the motion to consolidate.*

■ James originally appealed from the Parole Board decision imposing his special conditions of parole release. Several months later, after his parole was revoked, he filed a motion to consolidate, asking the superior court to allow him to raise issues related to the order revoking his parole. James now argues that the superior court abused its discretion by failing to recognize and grant his motion to consolidate as a motion to amend his points on appeal.[28]

We conclude that this argument is moot. The only issue that James sought to raise in his appeal from the parole revocation was the ex post facto issue we have just resolved: James claimed that his revocation was based on conditions of parole that were not authorized by the law in effect at the time of his crimes. In support of his request for consolidation, James noted that the decision in his appeal from the imposition of his parole con-

**22.** Alaska Const., art. 3, § 21.

**23.** *See Smith v. State, Dep't of Corr.*, 872 P.2d 1218, 1228 (Alaska 1994) (quoting Paul M. Bater, *The Constitution as Architecture: Legislative and Administrative Courts Under Article III*, 65 Ind. L.J. 233, 274 (1990)).

**24.** *State, Dep't of Corr. v. Lundy*, 188 P.3d 692, 696 (Alaska App.2008).

**25.** *Gyles v. State*, 901 P.2d 1143, 1148 (Alaska App.1995).

**26.** *See Bickford v. State, Dep't of Educ. and Early Dev.*, 155 P.3d 302, 313 (Alaska 2007) (claims not raised in superior court appeal of administrative action are beyond scope of supreme court appeal).

**27.** *Gyles*, 901 P.2d at 1148.

**28.** *See Amos v. State*, 46 P.3d 1044, 1045 (Alaska 2002) (reviewing for abuse of discretion this court's decision not to allow defendant to supplement a merit appeal with briefing on a sentence appeal).

ditions would moot this point in his appeal from his revocation. He was correct on this point. James's appeal from the parole revocation is now moot because we have decided that the conditions imposed by the Parole Board were valid.

We also conclude that the superior court did not abuse its discretion when it denied James's motion to consolidate. James appears to argue that the court should have recognized his motion as a motion to amend his points on appeal. He relies on cases reviewing a motion to amend the points in a criminal appeal[29] and a motion to amend a civil complaint.[30]

But this case is distinguishable from the cases James relies upon. This is not a case where a litigant seeks merely to add an additional argument regarding the validity of an administrative decision. James was seeking to add a separate appeal from a separate administrative decision based on a separate record. The superior court could conclude that this procedure would unreasonably complicate the appeal.

*Miscellaneous issues*

James appears to be arguing that his revocation violated due process because the Parole Board had no authority to impose special conditions on his parole. James does not clarify why this is a due process violation. This argument is moot because, as noted above, the Parole Board did have authority to impose the special conditions on James's mandatory parole.

James also argues that the superior court erred by failing to rule on some of his arguments. He first argues that the State was bound by a contract theory based on a letter from DOC indicating that the Parole Board would apply 1984 law to his parole release. This argument is adequately addressed in the foregoing decision. James could not prevail even if the State was bound by this letter because the law in 1984 authorized the Parole Board to impose special conditions on his parole release.

James similarly argues that the superior court failed to address his argument that he had a liberty interest related to his mandatory release. But the superior court's ruling on this issue is implicit in its ruling on the due process issue James raised in that court. The superior court assumed that James had a liberty interest at stake when the Parole Board set his parole conditions and ruled that James received adequate due process when he was allowed to submit comments during that procedure.

Finally, James argues that the superior court failed to address his argument that the Parole Board lacked personal jurisdiction to impose conditions on his parole. The answer to this issue is also implied in the ex post facto ruling affirmed in the foregoing opinion. The Parole Board had statutory authority to exercise personal jurisdiction over James when he was released on mandatory parole, based on statutes in effect since 1960.

## Conclusion

We consequently AFFIRM the superior court decision upholding the decision of the Alaska Board of Parole.

MANNHEIMER, Judge, not participating.

---

29. *Id.* at 1045.

30. *Hallam v. Holland Am. Line, Inc.*, 27 P.3d 751, 755 (Alaska 2001).