NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| CHAWN D. SUMMERALL,<br><br>　　　　　　　Appellant,<br><br>　　　v.<br><br>STATE OF ALASKA,<br><br>　　　　　　　Appellee. | Court of Appeals No. A-13956<br>Trial Court No. 3KO-10-00279 CR<br><br>O P I N I O N<br><br>No. 2783 — July 5, 2024 |

Appeal from the Superior Court, Third Judicial District, Kodiak, Daniel Schally, Judge.

Appearances: Renee McFarland, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for the Appellant. Ann B. Black, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Harbison and Terrell, Judges.

Judge HARBISON.

In 2010, Chawn D. Summerall was convicted of first-degree assault for conduct that took place in 2008.[1] Summerall was sentenced to 20 years with 9 years

---

[1]　Former AS 11.41.200(a) (pre-Oct. 2019).

suspended (11 years to serve) and 5 years of probation. He was released to probation in December 2016. For several years, Summerall complied with the terms of his probation. However, between May 2020 and December 2021, he committed numerous probation violations. The State filed four petitions to revoke his probation, and each petition resulted in Summerall's probation being revoked.

In this appeal, Summerall challenges the superior court's fourth disposition order, which addressed a probation violation that occurred in 2021. In this order, the superior court revoked Summerall's probation, imposed some of the suspended time, and extended his term of probation by 1 year (from 5 years to 6 years). Summerall argues that this extension of his probation was illegal because it exceeded the maximum allowable term under the former version of AS 12.55.090(c) that was in effect between 2016 and 2019. Alternatively, Summerall argues that the court was clearly mistaken in extending his probation.

Alaska Statute 12.55.090(c) has been amended three times since Summerall committed the underlying offense. Summerall's first claim requires this Court to determine which version of the statute applied when the superior court revoked Summerall's probation for the fourth time: the 2007 law (which established a 10-year probation maximum); the 2016 law (which lowered the maximum to 5 years); or the 2019 law (which raised the maximum back to 10 years). The extension of Summerall's probation from 5 years to 6 years was legal under the 2007 and 2019 laws, but illegal under the 2016 law.

As we are about to explain, we conclude that the superior court's disposition order was legal because the 2019 law applied and the extended probationary term (6 years) is within the 10-year maximum probationary term set out under that law.[2]

---

[2] We note that applying the 2019 law does not violate the prohibition against the application of ex post facto laws under the United States and Alaska Constitutions. U.S. Const. art. I, § 9; Alaska Const. art. I § 15. An ex post facto law is one that is both penal in nature and retrospectively applied. A law is retrospective if it is "passed after the occurrence of a fact or commission of an act [and] retrospectively changes the legal

We also conclude that the superior court's decision to extend Summerall's probation was not clearly mistaken. We thus reject Summerall's claims and affirm his sentence.

*The relevant legislation and the events in Summerall's case*

In 2007, AS 12.55.090(c) set the maximum term of probation for a class A felony offense at 10 years.[3] This 10-year maximum was in effect during the commission of Summerall's offense in 2008, when he was sentenced, and when the judgment was entered against him.

In 2016, as part of Senate Bill 91 (S.B. 91), the legislature amended AS 12.55.090(c) by reducing the maximum term of probation to 5 years.[4] The applicability provision of this law indicated that it would apply to "*probation* ordered on or after the effective date [July 12, 2016], for *offenses* committed before, on, or after the effective date."[5]

In 2019, the legislature amended AS 12.55.090(c) to increase the maximum term of probation to 10 years.[6] The applicability provision of this law

---

consequences or relations of such fact or deed." *Danks v. State*, 619 P.2d 720, 722 n.3 (Alaska 1980) (internal quotations and citations omitted). For retroactivity purposes, the critical date is that of the underlying criminal offense (rather than the date that supervised release is violated). Because the 2019 law did not provide for a greater penalty than the 2007 law — it merely restored the penalty that had been in effect under that law — applying the 2019 law does not violate the ex post facto clause for defendants sentenced under the 2007 law. However, for defendants who were sentenced *when S.B. 91 was in effect*, S.B. 91's ameliorative 5-year probation maximum would apply even if the defendant committed a probation violation after the 2019 amendment raised the probation maximum to 10 years.

[3] SLA 2007, ch. 24, § 22.

[4] SLA 2016, ch. 36, § 79.

[5] SLA 2016, ch. 36, § 185(i) (emphasis added).

[6] SLA 2019 (1st Special Session), ch. 4, § 68.

indicated that this amendment would apply "to *probation* ordered on or after the effective date [July 9, 2019] for *conduct* occurring on or after the effective date."[7]

In May 2020, Summerall violated his probation for the first time. Between 2020 and 2021, Summerall repeatedly violated his probation. Relevant to this appeal, Summerall violated his probation in December 2021, and the superior court entered a disposition order in January 2022. In its order, the court imposed a period of incarceration and extended Summerall's probation from 5 years to 6 years.

*Why we conclude that the 2019 law applies to the disposition of Summerall's 2021 probation violation*

Summerall contends that the trial court was required to apply the 2016 law — *i.e.*, S.B. 91 — when it determined the appropriate disposition of his fourth petition to revoke probation. Summerall acknowledges that the 2019 law sets the probation maximum for his offense at 10 years. However, he notes that the applicability provision of the 2019 statute refers to "conduct" that occurred "on or after" July 9, 2019, and he argues that, by "conduct," the legislature meant the underlying criminal offense, rather than the acts that violated his probation.[8] Because his underlying offense occurred in 2008, Summerall contends that the 2019 law did not apply to his case.

Summerall instead argues that the applicable maximum probation term is controlled by S.B. 91 — the 2016 amendment to AS 12.55.090(c). The applicability provision of that law states that it "applies to *probation* ordered on or after the effective date . . . for *offenses* committed before, on, or after the effective date [July 12, 2016]."[9]

---

[7] SLA 2019 (1st Special Session), ch. 4, § 142(d)(1) (emphasis added).

[8] To the extent the language is ambiguous, Summerall adds that the rule of lenity should "preclude H.B. 49's application to individuals facing disposition for a probation violation who were originally sentenced to a term of probation before H.B. 49's revision to AS 12.55.090(c) took effect."

[9] SLA 2016, ch. 36, § 185(i) (emphasis added). *Johnson v. State* held that "probation ordered" refers to "any new periods of probation—as well as any extension of the original

Summerall argues that S.B. 91 applied to his case because (1) the court entered the disposition order extending his probation in January 2022, which was "on or after" S.B. 91's effective date of July 12, 2016 and (2) he committed the underlying offense in 2008, which was "before, on, or after" the bill's effective date.

By contrast, the State interprets the 2019 amendment's reference to "conduct" to mean the act of violating probation rather than the act of committing the underlying criminal offense. Under this interpretation, the 2019 law applies because Summerall's probation violations occurred "on or after" its effective date of July 9, 2019.

The proper interpretation of a statute is a question of law to which we apply our independent judgment.[10] When "interpreting a statute, we consider its language, its purpose, and its legislative history, in an attempt to give effect to the legislature's intent, with due regard for the meaning the statutory language conveys to others."[11] Under Alaska's sliding scale approach to statutory interpretation, "the plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be."[12]

We begin by considering the statutory language of the 2019 amendment to AS 12.55.090(c). To determine what the legislature meant by the word "conduct" in

---

probation period—ordered on or after the effective date." *Johnson v. State*, 477 P.3d 665, 668 (Alaska App. 2020). Because Summerall's period of probation was extended, he had probation ordered in 2022 under our interpretation of that phrase in *Johnson*.

[10] *Kohlhaas v. State*, 518 P.3d 1095, 1103 (Alaska 2022).

[11] *State v. Planned Parenthood of the Great Nw.*, 436 P.3d 984, 992 (Alaska 2019) (internal quotations omitted).

[12] *Muller v. BP Expl. (Alaska) Inc.*, 923 P.2d 783, 788 (Alaska 1996).

this statute, we must consider its plain meaning not in isolation, but in the context of the whole statute.[13]

Two canons of construction prove useful in this analysis. First, under the canon of consistent usage (a canon that "is not . . . cast aside lightly"), "words are presumed to bear the same meaning throughout a text."[14] And second, when interpreting a statute, we must presume that "the legislature intended every word, sentence, or provision of a statute to have some purpose, force, and effect, and that no words or provisions are superfluous."[15]

When considered in isolation, the word "conduct" is ambiguous. "Conduct" could plausibly refer to the act of committing the underlying criminal offense, as Summerall claims, or it could refer to the act of violating a condition of probation, as the State claims. However, surrounding statutory provisions lend support to the State's position that "conduct" means the act of violating a condition of probation.

The applicability section, section 142 of the 2019 law, has eleven separate subsections.[16] Seven of these subsections, including subsection (d) at issue in this case, state that they apply "on or after the effective date . . . for *conduct* occurring on or after

---

[13]   *Murphy v. Fairbanks N. Star Borough*, 494 P.3d 556, 564 (Alaska 2021) (explaining that "we do not read portions of a statute in isolation. When construing a statute, we must, whenever possible, interpret each part of section of a statute with every other part or section, so as to create a harmonious whole." (internal quotations and alterations omitted)); *Ward v. State, Dep't of Pub. Safety*, 288 P.3d 94, 98-99 (Alaska 2012).

[14]   *Forrer v. State*, 471 P.3d 569, 597 (Alaska 2020) (internal citations omitted) (applying the canon to the interpretation of Alaska's constitution); *see also Bohn v. Providence Health Servs. – Washington*, 484 P.3d 584, 595 (Alaska 2021) (applying the canon to the interpretation of an Alaska statute).

[15]   *Johnson v. State*, 380 P.3d 653, 656 (Alaska 2016).

[16]   SLA 2019 (1st Special Session), ch. 4, § 142.

the effective date."[17] Two other subsections state that they apply to "*offenses* committed on or after the effective date."[18] Another subsection states that it applies to "*offenses* committed before, on, or after the effective date."[19] The fact that some of section 142's subsections refer to "conduct" and others refer to "offenses" indicates that these terms have distinct meanings. If "conduct" and "offense" had interchangeable meanings, the legislature would have used one consistent term.

Of these two terms, "offense" is more specific and "conduct" is more general. "Offense" generally refers to a crime or violation,[20] whereas "conduct" refers more generally to "[p]ersonal behavior, whether by action or inaction, verbal or nonverbal; the manner in which a person behaves; collectively, a person's deeds."[21]

The text thus supports the State's interpretation: that "conduct" means the act of violating probation. The legislature's decision to use the terms "conduct" and "offense" in different subsections of the applicability section, coupled with the plain meaning of those terms, suggests that the terms have different meanings. Had the legislature intended for section 142 to only apply to crimes that were committed on or after the effective date, the legislature would have stated that this provision of law applied to "offenses" committed on or after the effective date in every subsection rather

---

[17] SLA 2019 (1st Special Session), ch. 4, § 142 (b), (d) - (i) (emphasis added).

[18] SLA 2019 (1st Special Session), ch. 4, § 142 (a), (c), (emphasis added).

[19] SLA 2019 (1st Special Session), ch. 4, § 142(j).

[20] *See offense*, Black's Law Dictionary (11th ed. 2019). The term "offense" is defined in AS 11.81.900(b)(41) as "conduct for which a sentence of imprisonment or fine is authorized; an offense is either a crime or a violation."

[21] *Conduct*, Black's Law Dictionary (11th ed. 2019). The term "conduct" is defined in AS 11.81.900(b)(7) as "an act or omission and its accompanying mental state."

than to "conduct" committed on or after the effective date, as used in some subsections.[22]

We have also considered the statute's legislative history. In 2019, the Governor drafted a crime bill and transmitted it to the House (H.B. 49) and Senate (S.B. 32) for concurrent consideration. Ultimately, only H.B. 49 was enacted into law.

On January 22, 2019, the Governor provided the house with a letter to accompany H.B. 49.[23] In it, the Governor explained that "the most serious threat facing Alaska is crime" and that the passage of S.B. 91 in 2016 "limited our ability to address the increase in crime" and "contributed to the loss of … our ability to keep Alaskans safe."[24] The Governor explained that H.B. 49, if enacted, would "repeal[] provisions of S.B. 91 that relate to the classification of crimes, sentencing, and probation of offenders" and would "return[]" the "maximum probation lengths . . . to lengths allowable before the passage of S.B. 91."[25]

In February 2019, H.B. 49 was introduced in the House Rules Committee. In this original bill, AS 12.55.090(c)'s applicability provision had identical language to the bill that was ultimately enacted:

> AS 12.55.090(c), as amended by sec. 37 of this Act, applies to probation ordered on or after the effective date of sec. 37 of this Act for conduct occurring on or after the effective date of sec. 37 of this Act.[26]

---

[22] Notably, the legislature used the term "conduct" (rather than "offense") in the applicability provision for all subsections relating to probation and parole. *See* SLA 2019 (1st Special Session), ch. 4, § 142(d)-(h).

[23] Letter from Governor Mike Dunleavy to the Chief Clerk of the Alaska House of Representatives regarding House Bill 49 (January 22, 2019).

[24] *Id.*

[25] *Id.*

[26] H.B. 49, 31st Leg., 1st Sess. (Version A) (as introduced, Feb. 20, 2019).

On March 25, 2019, Deputy Attorney General Robert Henderson appeared before the House Judiciary Committee. Henderson explained that H.B. 49 would "return[] Alaska's . . . sentencing laws to what they were before 2016," which would provide "more options" to judges in exercising their sentencing discretion.[27] Henderson also briefly addressed AS 12.55.090(c), stating that H.B. 49 "returns the law to what it was pre-2016 as with regard to the availability and the length of probation and it increases probation."[28]

H.B. 49 was enacted in summer 2019.[29] While many committee hearings were held prior to the law's passage, the legislature did not substantively discuss the applicability provision of the bill. However, during that same legislative session, the Governor introduced S.B. 32 in the Senate. The legislature did discuss the applicability provision of the original version of S.B. 32, which had identical language to the original version of H.B. 49, and thus is relevant to our analysis.[30]

Summerall contends that these discussions support his view that when the legislature enlarged the period of probation for "conduct" occurring on or after the effective date, it was referring to the commission of the underlying criminal offense rather than the act of violating probation.

Summerall relies on a discussion that took place on February 8, 2019, when Deputy Attorney General Robert Henderson appeared before the Senate Judiciary Committee. Henderson explained S.B. 32's proposed change to AS 12.55.090(c) as follows:

---

[27] Audio of House Judiciary Committee, House Bill 49, testimony of Deputy Attorney General Robert Henderson, at 1:06:08 – 1:07:04 (Mar. 25, 2019).

[28] *Id.* at 2:52:20 – 2:52:46.

[29] SLA 2019 (1st Special Session), ch. 4.

[30] *Compare* S.B. 32, 31st Leg., 1st Sess. (Version A) (as introduced, Jan. 23, 2019), *with* H.B. 49, 31st Leg., 1st Sess. (Version A) (as introduced, Feb. 20, 2019).

So moving to section 37, section 37 increases the maximum period of probation for felony sex offenses from 15 years to 25 years. It also increases the maximum period of probation for all other offenses to 10 years. One of the things that S.B. 91 did is it limited the length of time a person could be put on probation depending on which offense they were convicted of. This returns that discretion to the court and allows the court to put somebody on probation for the length of time necessary, based on that judge's independent judgment as to what would be appropriate and necessary.[31]

Following this explanation, Chairwoman Shelley Hughes and Henderson discussed how someone sentenced while S.B. 91 was in effect would be impacted by these changes:

> *Hughes*: What happens if someone were sentenced during the period S.B. 91 was in effect. Does this apply to them? Or will they have the shorter probation periods?

> *Henderson*: Madame Chair, I am thinking, because that has to do with the applicability section, a person would be — the criminal penalties that would govern that conduct would be what existed at the time they committed the offense.[32]

Ultimately, S.B. 32 proceeded through the Senate Judiciary, State Affairs, and Finance Committees. The last committee meeting on S.B. 32 was held on May 3, 2019. Ultimately, it was S.B. 32's companion bill, H.B. 49, that was signed into law.

On appeal, Summerall contends that Henderson's answer to Hughes's question equated the term "conduct" in the applicability section with the term "offense." But Henderson was not asked to discuss the bill's impact on probation revocations for people sentenced *prior* to S.B. 91; instead, Hughes's question asked about people

---

[31] Audio of Senate Judiciary Committee, Senate Bill 32, testimony of Deputy Attorney General Robert Henderson, at 2:29:13 – 2:29:51 (Feb. 8, 2019).

[32] *Id.* at 2:29:51 – 2:30:24.

sentenced *during* the time that S.B. 91 was in effect. We accordingly do not view Henderson's response as useful in determining whether the legislature intended the increased probation period to apply to a disposition order entered in connection with a crime that was committed *before* S.B. 91 was enacted.

For similar reasons, we reject Summerall's claim that *Johnson v. State* supports his position.[33] In *Johnson*, we held that the probation maximums set out in S.B. 91 apply where a defendant committed their offense *before* S.B. 91, but had their probation revoked *during* the time that S.B. 91 was effective.[34] *Johnson* is factually distinct from the present matter because Summerall committed his offense *before* S.B. 91 but violated probation and had his probation revoked *after* S.B. 91 was repealed.

"The goal of statutory construction is to give effect to the legislature's intent, with due regard for the meaning the statutory language conveys to others."[35] As we have explained, the legislature's stated intention was to repeal S.B. 91 and to return the maximum period of probation to 10 years. This goal is better effectuated by interpreting "conduct" to mean a new probation violation, because the amendment would apply to a broader swath of cases. Furthermore, both the plain language of the 2019 amendment to AS 12.55.090(c) and the statute's legislative history support the interpretation that the term "conduct" refers to a defendant's act of violating their probation rather than their act of committing the underlying criminal offense. Interpreted this way, the court lawfully extended Summerall's probation from 5 to 6 years because the 2019 amendment to AS 12.55.090(c) — allowing for a maximum term of probation of 10 years — applied to the 2022 disposition of his 2021 probation

---

[33]  *Johnson v. State*, 477 P.3d 665 (Alaska App. 2020).

[34]  *Id.* at 666-69.

[35]  *City of Valdez v. State*, 372 P.3d 240, 254 (Alaska 2016) (quoting *City of Fairbanks v. Amoco Chem. Co.*, 952 P.2d 1173, 1178 (Alaska 1998)).

violation. We accordingly reject Summerall's challenge to the extension of his probation.

*Why we conclude that the superior court's decision to extend Summerall's probation was not clearly mistaken*

In *State v. Pulusila*, the Alaska Supreme Court explained the standard for sentencing defendants following probation violations:

> The trial court has substantial discretion at the disposition stage. A trial court can impose a sentence less than jail time or otherwise change the terms and conditions of probation without imposing full remaining jail time. . . . A court can consider any relevant information in the record, including "the original offense, the offender, and the defendant's intervening conduct."[36]

On appeal, a sentence will only be reversed if the disposition was clearly mistaken — *i.e.*, outside the permissible range of reasonable sentences.[37]

The "clearly mistaken test is founded on two concepts: first, that reasonable judges, confronted with identical facts, can and will differ on what constitutes an appropriate sentence; . . . second, that society is willing to accept these sentencing discrepancies, so long as a judge's sentencing decision falls within a permissible range of reasonable sentences."[38]

Summerall argues that the trial court was clearly mistaken in extending his probation by 1 year (from 5 years to 6 years). In support of this claim, he cites to research that "longer terms of probation can be counterproductive," and that the 1-year

---

[36] *State v. Pulusila*, 467 P.3d 211, 218 (Alaska 2020) (quoting *Betzner v. State*, 768 P.2d 1156 (Alaska App. 1989)).

[37] *McClain v. State*, 519 P.2d 811, 813-14 (Alaska 1974); *Covington v. State*, 747 P.2d 550, 554 (Alaska App. 1987); *Smith v. State*, 349 P.3d 1087, 1091 (Alaska App. 2015).

[38] *Smith*, 349 P.3d at 1091 (omission in original) (internal quotations omitted).

extension was clearly mistaken because the outstanding 18 months that Summerall had on probation (notwithstanding the extension) was "sufficient" to usher his "reentry back into society." Summerall did not specifically address why, in the context of his case, the 1-year extension was clearly mistaken.

In 2010, Summerall was convicted of first-degree assault for his part in beating a man who later died of his injuries.[39] He was sentenced to 20 years with 9 years suspended (11 years to serve), and 5 years of probation. During the sentencing hearing, the court remarked that Summerall had a "severe alcohol problem." This remark was supported by (1) the facts of the offense as described in the presentence report, (2) Summerall's criminal history, and (3) Summerall's own allocution to the court. The court found that, although the record supported sentencing Summerall to 20 years flat, due to Summerall's recent sobriety, a suspended sentence with a probation term tailored to address his substance abuse was warranted.

Between May 2020 and December 2021, Summerall violated conditions of his probation four separate times. Each violation stemmed from Summerall either using alcohol or drugs, or failing to submit to testing for alcohol or drugs. The seriousness of Summerall's violations appeared to escalate, as did the severity of the court's disposition orders. Summerall received 14 days for his first violation — consuming alcohol; 75 days followed by up to 6 months in a Community Residential Center (CRC) for his second violation — using methamphetamine and refusing to provide a urine sample; and 180 days for his third violation — using marijuana and again using methamphetamine.

In January 2022, the court held a combined adjudication and disposition hearing on Summerall's fourth petition to revoke probation. At this hearing, Summerall admitted to violating his probation by using marijuana and methamphetamine. The

---

[39] Summerall was acquitted of second-degree murder, but the jury found him guilty of first-degree assault.

prosecutor explained to the court that Summerall's drug use while on probation had been "pretty consistent." Ultimately, the court revoked Summerall's probation, sentenced him to 6 months to serve, extended his probation by 1 year, and authorized his probation officer to admit him to CRC (substance abuse treatment) for 6 months. The court explained that it had "reentry concerns" relating to Summerall's drug and alcohol addictions. The court found that a "sufficiently lengthy period of probation" was needed to ensure that Summerall would "have a successful reentry back into society."

This 1-year extension of Summerall's probation was not clearly mistaken. As the court noted, by extending Summerall's probation by 1 year, the court was addressing Summerall's substance abuse issues in order to further his rehabilitation. A period of probation would provide Summerall with both monitoring and an incentive to access substance abuse treatment resources — tools that could help him regain his sobriety.

When Summerall was sentenced on the underlying offense, the court indicated that Summerall's sobriety was very important to the protection of the community and to Summerall's rehabilitation. The 1-year extension of Summerall's probation was supported by the *Chaney* criteria, and was reasonable under the circumstances. We accordingly reject Summerall's claim that the court's disposition order was clearly mistaken.

*Conclusion*

We AFFIRM the judgment of the superior court.