NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>*. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

DEMITRI KARDEM SCOTT,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-14453
Trial Court No. 3AN-23-09952 CI

O P I N I O N

No. 2823 — January 30, 2026

Appeal from the Superior Court, Third Judicial District, Anchorage, Andrew Peterson, Judge.

Appearances: Josh Carson, Assistant Public Defender, Juneau, and Terrence Haas, Public Defender, Anchorage, for the Appellant. Lauren G. Johansen, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Harbison and Terrell, Judges.

Judge ALLARD.

Demitri Kardem Scott pleaded guilty to a consolidated count of first-degree robbery committed in August 2017 and was sentenced to 8 years'

imprisonment.[1] The parole law in effect at the time of his offense was enacted as part of Senate Bill 91 (S.B. 91) and limited the amount of time that the Alaska Parole Board could impose on a parolee for the parole violation of absconding to 30 days.[2]

Scott was released on mandatory parole in May 2023. Scott failed to report to his parole officer, and he subsequently admitted to violating his parole conditions by absconding. By the time of his parole violation, the Alaska legislature had repealed many parts of S.B. 91, and the new parole statute did not have any limits on the time that could be imposed for absconding.[3]

Applying the law in effect at the time of Scott's parole violation (rather than the parole law in effect at the time Scott committed his offense), the Parole Board fully revoked Scott's parole, ordering him to serve the remaining 974 days of his sentence.[4]

Scott filed a *pro se* application for post-conviction relief, arguing that application of the current parole law to his case violated the state and federal constitutional prohibitions against *ex post facto* laws.[5] The superior court denied Scott's application, and Scott timely appealed.

On appeal, Scott renews his claim that applying the current parole statutes to him, rather than the statutes in effect at the time of his underlying offense, violates

---

[1] AS 11.41.500(a)(1).

[2] Former AS 33.16.215(b) (2017) ("If the board revokes a parolee's parole for absconding, the board may impose a period of imprisonment not to exceed 30 days.").

[3] *See* AS 33.16.220(i) (providing if "the board finds that the parolee has violated a condition of parole . . . the board may revoke all or a portion of the remaining period of parole"), *as amended by* FSSLA 2019, ch. 4, § 115.

[4] *See id.*

[5] U.S. Const. art. I, § 9, cl. 3; Alaska Const. art. I, § 15.

the *Ex Post Facto* Clauses of the United States and Alaska Constitutions.[6] Although Scott was released shortly after briefing in this case was completed, we reach the legal question raised in this appeal under the public interest exception to the mootness doctrine.[7] For the reasons discussed in this opinion, we conclude that for those defendants, like Scott, who committed their underlying offenses when S.B. 91 was in effect, the post-S.B. 91 version of AS 33.16.220(i) cannot be applied by the Parole Board when imposing periods of imprisonment for technical violations of parole conditions.

*The timing of the relevant legislation and events in Scott's case*

In 2016, as part of S.B. 91, the Alaska legislature enacted statutes limiting the sanctions that the Parole Board may impose for technical parole violations such as absconding.[8]

Specifically, AS 33.16.215(b) provided: "If the board revokes a parolee's parole for absconding, the board may impose a period of imprisonment not to exceed 30 days."[9] This limitation on the period of imprisonment for absconding was incorporated in AS 33.16.220(i): "[i]f, after the final revocation hearing, the board finds that the parolee has violated a condition of parole imposed under AS 33.16.150(a), (b), or (f), or a law or ordinance, the board may revoke all or a portion of the remaining

---

6   U.S. Const. art. I, § 9, cl. 3; Alaska Const. art. I, § 15.

7   *See State v. Roberts*, 999 P.2d 151, 153 (Alaska App. 2000) (quoting *Krohn v. State, Dep't of Fish & Game*, 938 P.2d 1019, 1021 (Alaska 1997)).

8   *See* SLA 2016, ch. 36, §§ 145, 148-50; *see also* former AS 33.16.215(f)(1) (2017) (defining "absconding" as "failing to report [to a parole officer] within five working days after release from custody under AS 33.20.030 or failing to report for a scheduled meeting with a parole officer, as directed by the board or the parole officer, and failing to make contact with the parole officer within 30 days following the missed meeting").

9   Former AS 33.16.215(b) (2017).

period of parole subject to the limits set out in AS 33.16.215, or change any condition of parole."[10] These statutes went into effect on January 1, 2017, and applied "to parole granted before, on, or after th[at] effective date."[11]

Scott pleaded guilty to a consolidated count of first-degree robbery that occurred in August 2017, when S.B. 91 was in effect.[12] Pursuant to a plea agreement, Scott was sentenced to 8 years flat.

In 2019, the legislature enacted House Bill 49 (H.B. 49), which repealed former AS 33.16.215.[13] Under the amended AS 33.16.220(i), "the board may revoke all or a portion of the remaining period of parole or change any condition of parole."[14] The applicability provision of this law indicated that this amendment would "apply to parole ordered before, on, or after the effective date of those sections for conduct occurring on or after the effective date."[15] The effective date of these changes was July 9, 2019.[16]

In 2022, Scott became eligible for release from state custody on mandatory parole, but he remained in custody until May 2023 because of a pending

---

[10]   Former AS 33.16.220(i) (2017).

[11]   SLA 2016, ch. 36, §§ 185(p), 190.

[12]   *See id.*

[13]   FSSLA 2019, ch. 4, §§ 138, 150.

[14]   FSSLA 2019, ch. 4, § 115.

[15]   FSSLA 2019, ch. 4, § 142(g)(2).

[16]   Section 150 provided that the effective date was to be July 1, 2019, but the Governor did not sign H.B. 49 until July 8, 2019, so the effective date became July 9, 2019. *See* FSSLA 2019, ch. 4, §§ 138, 150; *Governor Dunleavy Signs Crime-Fighting Legislation Into Law*, Off. of the Governor (July 8, 2019), https://gov.alaska.gov/governor-dunleavy-signs-crime-fighting-legislation-into-law/.

federal charge.[17] One of Scott's mandatory parole conditions required him to report to his parole officer on the next working day after being released from custody. Scott did not report as required; instead, he remained in abscond status until August, when he was arrested pursuant to a warrant.

During a parole revocation hearing in September 2023, Scott admitted to violating his parole conditions by absconding. In response, the Parole Board revoked Scott's parole entirely — ordering him to serve the remaining 974 days of his sentence. Scott filed a timely *pro se* application for post-conviction relief before the superior court.[18]

*The superior court's dismissal of Scott's post-conviction relief application*

Scott filed a motion for summary disposition, asserting that application of the current parole law made the punishment imposed for his underlying crime "more burdensome" than the punishment authorized when that crime was committed.[19] According to Scott, such a retrospective increase in the punishment imposed for a crime is prohibited by the *Ex Post Facto* Clauses of the United States and Alaska Constitutions.[20]

The State opposed and cross-moved for summary disposition. The State argued there was no *ex post facto* violation because the Parole Board did not change or

---

[17]  *See* AS 33.16.010(a), (c) (addressing eligibility for mandatory parole). The record is unclear on whether Scott was released from federal custody on May 16 or May 19, 2023. However, because the parties agree that Scott absconded, the exact date of his release is not material to the legal question presented in this appeal.

[18]  AS 12.72.020(a)(4).

[19]  *See Doe v. State*, 189 P.3d 999, 1003 (Alaska 2008) (quoting *State v. Anthony*, 816 P.2d 1377, 1378 (Alaska 1991)).

[20]  U.S. Const. art. I, § 9, cl. 3; Alaska Const. art. I, § 15.

increase Scott's sentence for his underlying first-degree robbery by requiring him to serve the remainder of his sentence for violating his parole. According to the State, Scott's "relevant act" was his parole violation in 2023, not his underlying robbery in 2017, and this violation occurred years after the parole law Scott relied on was repealed in 2019.[21]

The superior court granted the State's motion for summary disposition and dismissed Scott's post-conviction relief application. The court reasoned that the "Parole Board's decision only sought to punish Scott for absconding on parole" and "was not aimed at punishing Scott for his robbery," so there was no *ex post facto* violation.

### *Why we conclude that the retrospective application of the current parole laws constituted an ex post facto violation as applied to Scott*

On appeal, the parties dispute whether the Parole Board's application of the current parole laws to Scott increased Scott's punishment for his underlying offense in violation of the *Ex Post Facto* Clauses of the United States and Alaska Constitutions.[22]

We start our analysis by interpreting the statutes at issue. This Court reviews questions of law, including matters of statutory interpretation, *de novo*.[23] "The goal of statutory construction is to give effect to the legislature's intent, with due regard

---

[21]   *See* FSSLA 2019, ch. 4, §§ 138, 150 (repealing former AS 33.16.215, effective July 2019).

[22]   U.S. Const. art. I, § 9, cl. 3; Alaska Const. art. I, § 15.

[23]   *Collins v. State*, 568 P.3d 349, 358 (Alaska 2025); *see also Doe v. State*, 189 P.3d 999, 1002-03 (Alaska 2008) (applying *de novo* review to question of whether the Alaska Sexual Offender Registration Act violates the *Ex Post Facto* Clause of the Alaska Constitution).

for the meaning the statutory language conveys to others."[24] Under Alaska's sliding scale approach to statutory interpretation, "[t]he plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be."[25]

In August 2017, when Scott committed his underlying offense, S.B. 91 established statutory limits on the time that could be imposed by the Board for technical violations of parole conditions, including for absconding.[26] The Board's authority to impose a period of imprisonment for absconding was limited by former AS 33.16.215(b): "If the board revokes a parolee's parole for absconding, the board may impose a period of imprisonment *not to exceed 30 days*."[27] This limitation applied to "parole granted before, on, or after" January 1, 2017.[28]

In 2019, H.B. 49 repealed much of S.B. 91, including former AS 33.16.215.[29] In light of this repeal, AS 33.16.220(i) was amended to remove the

---

[24] *Summerall v. State*, 553 P.3d 1255, 1261 (Alaska App. 2024) (quoting *City of Valdez v. State*, 372 P.3d 240, 254 (Alaska 2016)).

[25] *McDonnell v. State Farm Mut. Auto. Ins. Co.*, 299 P.3d 715, 721 (Alaska 2013) (alteration in original) (quoting *Gov't Emps. Ins. Co. v. Graham-Gonzalez*, 107 P.3d 279, 284 (Alaska 2005)).

[26] *See* SLA 2016, ch. 36, § 145; former AS 33.16.215(f)(2) (2017) (defining a "technical violation" as "a violation of the conditions of parole that does not constitute" "a new criminal offense"; "failing to complete sex offender treatment"; or "failing to complete an intervention program for batterers"); former AS 33.16.215(f)(1) (2017) (defining "absconding").

[27] Former AS 33.16.215(b) (2017) (emphasis added); *see also* former AS 33.16.220(i) (2017) (incorporating "the limits set out in AS 33.16.215" in the procedure for revoking parole).

[28] SLA 2016, ch. 36, §§ 185(p), 190 (providing effective date of January 1, 2017).

[29] FSSLA 2019, ch. 4, § 138. We note that the legislature did not include specific language in H.B. 49 providing a non-punitive intent in repealing AS 33.16.215 and amending AS 33.11.220(i).

limitations imposed by S.B. 91, and the Board was granted the discretion to completely revoke a parolee's parole for absconding.[30]

House Bill 49's parole laws went into effect on July 9, 2019, and "appl[ied] to parole ordered before, on, or after the effective date of those sections for *conduct* occurring on or after the effective date."[31] As we have previously concluded in interpreting the relevant applicability sections of H.B. 49, "conduct" means the act of violating a condition of probation or parole.[32]

Scott's "conduct" — violating a condition of parole by absconding — occurred in 2023, after H.B. 49 went into effect. House Bill 49 therefore calls for the application of the new AS 33.16.220(i) (with the thirty-day limitation for a parole revocation for absconding removed) to a person, like Scott, whose underlying crime was committed while S.B. 91 was effective but who violated a condition of parole after it was repealed. This case therefore turns on whether, as Scott argues, application of AS 33.16.220(i) to this class of people is an unconstitutional *ex post facto* law.

Article I, Section 15 of the Alaska Constitution, like Article I, Section 9 of the United States Constitution, provides, "No . . . ex post facto [l]aw shall be passed."[33] Alaska courts have generally construed the Alaska *Ex Post Facto* Clause as

---

[30] FSSLA 2019, ch. 4, § 115.

[31] FSSLA 2019, ch. 4, §§ 142(g)(2) (emphasis added), 150; *see supra* note 16. We further note we held that the term "probation ordered" in the applicability provision of another statute refers to "any new periods of probation — as well as any extension of the original probation period — ordered on or after the effective date." *Johnson v. State*, 477 P.3d 665, 668 (Alaska App. 2020). This same interpretation applies to the meaning of "parole ordered."

[32] As we noted in *Summerall v. State*, "the legislature used the term 'conduct' (rather than 'offense') in the applicability provision for all subsections relating to probation and parole." *Summerall v. State*, 553 P.3d 1255, 1259-61 & n.22 (Alaska App. 2024) (citing FSSLA 2019, ch. 4, § 142(d)-(h)).

[33] Alaska Const. art. I, § 15; U.S. Const. art. I, § 9, cl. 3.

coextensive with its federal counterpart.[34] An *ex post facto* law is "both penal in nature and retrospectively applied."[35] The *Ex Post Facto* Clauses of the United States and Alaska Constitutions "forbid[] the legislature from enacting or amending a penal statute so as to retroactively criminalize, or increase the penalty for, acts that have already been committed."[36] In other words, these clauses forbid a law "which makes more burdensome the punishment for a crime, after its commission."[37]

Scott argues that a period of imprisonment imposed for a parole violation is a punishment for the underlying offense. Scott argues that because the parole law at the time of his offense in 2017 — *i.e.*, S.B. 91 — provided for the imposition of a maximum of 30 days' imprisonment for absconding, applying the current AS 33.16.220(i) to impose 974 days' imprisonment for his 2023 parole violation retrospectively increased Scott's punishment for his first-degree robbery in violation of the *Ex Post Facto* Clauses.

---

[34] *Doe v. State*, 189 P.3d 999, 1004-07 (Alaska 2008) (describing long line of cases in which the Alaska Supreme Court has "construed Alaska's ex post facto prohibition . . . to be coextensive with the corresponding federal prohibition," but noting "contemporaneous and repeated recognition that [the Court has] the authority and, when necessary, duty to construe the provisions of the Alaska Constitution to provide greater protections than those arising out of the identical federal clauses").

[35] *Summerall*, 553 P.3d at 1257 n.2; *see also Danks v. State*, 619 P.2d 720, 722 n.3 (Alaska 1980) ("An ex post facto law is a law 'passed after the occurrence of a fact or commission of an act, which retrospectively changes the legal consequences or relations of such fact or deed.'" (quoting "Ex Post Facto Law," Black's Law Dictionary (5th ed. 1979))); *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 391 (1798) (opinion of Chase, J.) ("Every ex post facto law must necessarily be retrospective; but every retrospective law is not an ex post facto law[.]").

[36] *Collins v. State*, 568 P.3d 349, 360 (Alaska 2025) (alteration in original) (quoting *Collins v. State*, 494 P.3d 60, 65 (Alaska App. 2021), *rev'd and remanded*, 568 P.3d 349 (Alaska 2025)).

[37] *Doe*, 189 P.3d at 1003.

The State disagrees, asserting that the Board's application of current parole laws did not increase Scott's punishment for the underlying offense as contained in Scott's judgment, but rather increased the amount of time that the Board was able to impose for violating his parole conditions by absconding.[38]

The substance of the parties' dispute boils down to whether applying H.B. 49 to Scott's parole revocation increased Scott's punishment for his underlying offense or whether parole revocation is a separate punishment for violating conditions on parole.

The United States Supreme Court seemingly answered this question in *Johnson v. United States*.[39] The defendant in that case, Cornell Johnson, was convicted of conspiring to defraud and sentenced to a term of imprisonment followed by three years of supervised release.[40] (Supervised release is analogous to parole.[41]) Johnson violated the conditions of his supervised release and his release was revoked.[42] At the revocation hearing, the district court imposed a term of imprisonment and, apparently pursuant to a statute that had been enacted after Johnson committed his crimes, sentenced Johnson to a period of supervised release following his term of imprisonment.[43]

---

[38] *See* AS 33.16.220(i).

[39] *Johnson v. United States*, 529 U.S. 694 (2000).

[40] *Id.* at 697.

[41] *See, e.g.*, *Smith v. Doe*, 538 U.S. 84, 115 (2003) (Ginsburg, J., dissenting) (analogizing the requirements of the Alaska Sex Offender Registration Act to "supervised release or parole").

[42] *Johnson*, 529 U.S. at 697-98.

[43] *Id.* at 698.

Johnson appealed, arguing that application of the new law to him violated the *Ex Post Facto* Clause of the federal constitution.[44] According to Sixth Circuit precedent, there was no *ex post facto* violation because revocation of supervised release "imposes punishments for defendants' new offenses for violating the conditions of their supervised release."[45] Following that precedent, the Sixth Circuit affirmed Johnson's new period of supervised release because Johnson's "new" offense of violating the conditions of his supervised release did not occur until the new law was already in effect.[46]

Johnson appealed his case to the United States Supreme Court, which rejected wholesale the Sixth Circuit's reasoning that revocation of supervised release punished the new violation and not the original offense (but affirmed the Sixth Circuit for other reasons).[47] The Supreme Court noted that the government had "wisely" disavowed this position in the proceedings before the Court "in view of the serious constitutional questions that would be raised by construing revocation and reimprisonment as punishment for the violation of the conditions of supervised release."[48] As the Court explained, "[t]reating postrevocation sanctions as part of the penalty for the initial offense . . . (as most courts have done), avoids these [constitutional] difficulties."[49] The Court further explained that "such treatment is all but entailed by our summary affirmance of *Greenfield v. Scafati*, . . . in which a three-

---

[44]  *Id.*

[45]  *United States v. Page*, 131 F.3d 1173, 1176 (6th Cir. 1997), *abrogated by Johnson v. United States*, 529 U.S. 694 (2000).

[46]  *United States v. Johnson*, 181 F.3d 105 (6th Cir. 1999), *aff'd*, 529 U.S. 694 (2000).

[47]  *Johnson*, 529 U.S. at 698-701, 713.

[48]  *Id.* at 700.

[49]  *Id.* at 700-01 (collecting cases).

judge panel forbade on *ex post facto* grounds the application of a Massachusetts statute imposing sanctions for violation of parole to a prisoner originally sentenced before its enactment."[50] As the Court concluded, "We therefore attribute postrevocation penalties to the original conviction."[51]

Attributing postrevocation penalties to the original conviction is also consistent with Alaska law. This Court has repeatedly reasoned that revocation and re-imprisonment for a probation or parole violation is punishment for the underlying criminal offense, so for retroactivity purposes the critical date is that of the underlying criminal offense.[52] As we explained in *Knowlton v. State*,

> Parole is revoked for violation of the terms and conditions of parole and as part of the continuing consequences of the crime for which parole was granted. Parole revocation is not punishment for the subsequent events which violate the parole and which may also constitute a separate crime.[53]

The Alaska Supreme Court has also followed this reasoning. In *Elstad v. State*, the Alaska Supreme Court held that the "practical effect" of applying current

---

   [50]   *Id.* at 701 (citing *Greenfield v. Scafati*, 277 F. Supp. 644 (D. Mass. 1967), *summarily aff'd*, 390 U.S. 713 (1968)).

   [51]   *Id.*

   [52]   *See, e.g.*, *Summerall v. State*, 553 P.3d 1255, 1257 n.2 (Alaska App. 2024) ("For retroactivity purposes, the critical date is that of the underlying criminal offense (rather than the date that supervised release is violated)."); *Medina v. State*, 418 P.3d 861, 864 (Alaska App. 2018) ("Thus, probation violations are not new 'offenses,' separate and independent from one another and from the underlying criminal conviction. Rather, probation revocations relate back to the underlying criminal offense[.]"); *James v. State*, 244 P.3d 542, 546 (Alaska App. 2011) (concluding that if "the Parole Board was authorized to set special conditions of mandatory parole when James committed his offenses in 1979 and 1984," then "the enactment of a new parole statute in 1985 did not increase James's punishment in a way that violated the ex post facto clauses" (citing *Braham v. Beirne*, 675 P.2d 1297, 1300 (Alaska App. 1984))).

   [53]   *Knowlton v. State*, 795 P.2d 1287, 1290-91 (Alaska App. 1990) (quoting *State v. Johnson*, 599 P.2d 529, 532 (Wash. 1979) (en banc)).

statutes that authorized a longer period of parole ineligibility than did those statutes in effect at the time Elstad committed the underlying offense "would be to allow Elstad to suffer greater actual punishment than was authorized by those statutes in existence at the time he committed his offense."[54] Viewing this as "akin to the enforcement of an *ex post facto* law," the Alaska Supreme Court held that Elstad was entitled to the parole eligibility statute that was in place at the time of his original offense.[55]

This is not to say that defendants are always entitled to the parole laws that were in place at the time they committed their original offense. What matters for purposes of the *ex post facto* analysis is whether the application of the current law would create a significant risk of increasing the defendant's punishment.[56]

In *California Department of Corrections v. Morales*, the United States Supreme Court concluded that an amendment to California's parole procedures that allowed "the Board of Prison Terms to decrease the frequency of parole suitability hearings under certain circumstances" did not violate the *Ex Post Facto* Clause.[57] Under the previous law, after the initial suitability hearing, the Board was required to hold subsequent suitability hearings annually.[58] But, under the amended law, the Board could defer subsequent hearings for up to three years "if the prisoner ha[d] been convicted of

---

[54] *Elstad v. State*, 599 P.2d 137, 140 (Alaska 1979).

[55] *Id.*

[56] *Garner v. Jones*, 529 U.S. 244, 250, 252 (2000) (noting that the "controlling inquiry" is whether the amended law "creates a significant risk of prolonging [the petitioner's] incarceration"); *Collins v. State*, 568 P.3d 349, 360 (Alaska 2025) (explaining *ex post facto* clauses forbid increasing the penalty for acts that have already been committed); *James v. State*, 244 P.3d 542, 545-46 (Alaska App. 2011) ("The ex post facto clauses of the state and federal constitutions prevent the legislature from enacting a statute that retroactively makes the punishment for a crime more burdensome.").

[57] *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 501-02 (1995).

[58] *Id.* at 503.

'more than one offense which involves the taking of a life' and . . . the Board 'finds that it is not reasonable to expect that parole would be granted at a hearing during the following years and states the bases for the finding.'"[59]

Before the United States Supreme Court, Morales argued that application of the amended law was impermissible because "the *Ex Post Facto* Clause forbids *any* legislative change that has *any* conceivable risk of affecting a prisoner's punishment."[60] The Supreme Court disagreed. The Court noted that the change in law applied only to *subsequent* parole suitability hearings and "to a class of prisoners for whom the likelihood of release on parole is quite remote."[61] The Court explained that the mere creation of "some speculative, attenuated risk" of increased punishment did not automatically establish an *ex post facto* violation.[62] If that were the case, then courts would be required to "invalidate any of a number of minor (and perhaps inevitable) mechanical changes that might produce some remote risk of impact on a prisoner's expected term of confinement."[63]

Scott asserts that AS 33.16.220(i) creates a significant risk of impermissibly increasing the measure of punishment for parolees like him, who committed their underlying crime while S.B. 91 was in effect, because the legislature repealed the parole revocation sentencing caps for technical violations. In other words, because the Parole Board is now authorized to impose a much longer period of imprisonment for technical parole violations, there is a significant risk that it will do so (as it did in Scott's case).

---

[59]  *Id.* (quoting Cal. Penal Code § 3041.5(b)(2) (West 1982)).

[60]  *Id.* at 508 (emphasis added).

[61]  *Id.* at 510-11.

[62]  *Id.* at 508-09.

[63]  *Id.* at 508.

We agree with Scott. Here, unlike in *Morales*, the risk of increased imprisonment is significant. When Scott committed his underlying offense, the punishment for absconding from parole was limited to 30 days.[64] After the repeal of S.B. 91, there were no longer any limits, and defendants could receive (as Scott did) sentences that included their entire remaining parole time.[65]

We therefore agree with Scott that, for defendants like Scott who committed their underlying offense when S.B. 91 was in effect, AS 33.16.220(i) inherently creates a significant risk of prolonging their incarceration by authorizing the Parole Board to revoke all or any portion of the remaining period of parole for absconding. We therefore hold that AS 33.16.220(i), as applied to Scott and other parolees who committed their underlying offenses when S.B. 91 was in effect, violates the *Ex Post Facto* Clauses of the Alaska and United States Constitutions.

*Conclusion*

The judgment of the superior court is REVERSED.

---

[64] Former AS 33.16.215(b) (2017); *see also* former AS 33.16.220(i) (2017) (incorporating "the limits set out in AS 33.16.215" in the procedure for revoking parole).

[65] *See* AS 33.16.220(i).